Thomas A. EISENSCHENK, Respondent,

v.

MILLERS' MUTUAL INSURANCE ASSOCIATION OF ILLINOIS, Appellant.

No. C5–83–2065.

Court of Appeals of Minnesota.

Aug. 21, 1984.

L. Michael Hall, St. Cloud, for respondent.

J. Richard Bland, Laura S. Underkuffler, Gary W. Hoch, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for appellant.

Heard, considered, and decided by POPOVICH, C.J. and HUSPENI, and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

This is a declaratory judgment action to determine whether appellant is entitled to receive underinsured motorist benefits under an insurance policy issued to his father after appellant has received the full liability limits under that policy as a result of a one-car accident. Appellant Millers' Mutual Insurance Association of Illinois (Millers') appeals from the trial court's finding that underinsured motorist coverage was available to plaintiff. We reverse.

## FACTS

Plaintiff-respondent Thomas A. Eisenschenk was injured in a one-car accident. He was a passenger in a car owned by his father, Dennis Eisenschenk, and driven by his sister. The sister had Dennis' permission to drive the vehicle. The policy described "covered person" as "(y)ou or any family member ... (or) any person using your covered auto."

Millers' paid Thomas its liability limits on Dennis Eisenschenk's policy. Dennis also carried $50,000 in underinsured motorist coverage on each of two cars. Thomas filed suit against Millers' to collect this insurance after Millers' refused to pay on the basis of an exclusion in the policy for injuries caused by vehicles owned or available for the regular use of family members.

Dennis and Alice Eisenschenk first purchased insurance through Millers' in 1976. This was a "Golden Key" policy which contained underinsured motorist coverage in the amount of $50,000 per automobile. The underinsured coverage was incorporated in the policy through an endorsement, denoted "A287". The Eisenschenks acknowledge receipt of endorsement A287. The heading of the endorsement stated that "(t)his endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: UNINSURED MOTORISTS INSURANCE." Included in the endorsement is the following statement:

(S)ubdivision (a) of the definition of "uninsured highway vehicle" ... is amended to include "underinsured highway vehicle".

A287 also set forth a definition of underinsured highway vehicle as follows:

"(U)nderinsured highway vehicle" means a highway vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under this insurance.

Within the main body of the policy, the definition of "uninsured highway vehicle" states that:

"(U)ninsured highway vehicle" means:

(a) a highway vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily liability injury bond ... or

(b) a hit-and-run vehicle;

but the term "uninsured highway vehicle" shall not include

(1) an "insured automobile" or an automobile furnished for the regular use of the named insured or of any person resident in the same household who is related to the named insured by blood, marriage or adoption, ...

An "insured automobile" is defined in the policy as an owned automobile while used with permission of the named insured.

The "Golden Key" policy was renewed semi-annually. On or about April 4, 1980, Millers' issued a "Personal Auto Policy" to the Eisenschenks which was in effect at the time of the accident. This was a renewal policy, and the declaration sheet showed it included underinsured motorist coverage for $50,000 per automobile. The coverage was normally provided by an attached endorsement, as with the "Golden Key" policy. This endorsement was denoted "A558" and included an exclusion in the definition of underinsured motor vehicle of any vehicle "owned by or furnished or available for the regular use of you or any family member."

The Eisenschenks remember receiving the Personal Auto Policy, but do not recall receiving endorsement A558. After trial on the factual issues, the court found that endorsement A558 was never delivered to the Eisenschenks and was therefore "void and of no force and effect" on the date of the accident. The court concluded that the exclusion contained in that endorsement therefore did not apply. The court did find that the underinsured motorist coverage was available for plaintiff in the amount of $100,000.

## ISSUE

1. Whether the original policy definition of "uninsured motor vehicle" excludes coverage for family vehicles and is incorporated in the existing policy for underinsured motorist coverage.

2. Whether a policy clause which excludes underinsured motor vehicle coverage for an insured's own vehicle is valid.

## ANALYSIS

1. The trial court's finding that endorsement A558 was not delivered leaves the Personal Auto Policy without a definition of its underinsured motorist coverage. When a policy is renewed and the precise terms are not stated, new insurance like the expiring insurance is intended. *Schmidt v. Agricultural Ins. Co.*, 190 Minn. 585, 252 N.W. 671 (1934). Further, an insurer has a duty to renew on the same terms and conditions as the original policy. *Glaser v. Alexander*, 247 Minn. 130, 76 N.W.2d 682 (1956). The "Golden Key" policy and endorsement A287 preceded endorsement A558.

Insurance policies are interpreted in the plain, ordinary meaning of their terms, using the standard of what a reasonable person would understand them to mean. *Canadian Universal Ins. Co. v. Fire Watch*, 258 N.W.2d 570 (Minn.1977). A287 modifies the first paragraph of the definition of uninsured highway vehicle, (a), to include underinsured highway vehicles. The exclusion which follows incorporates the term "uninsured highway vehicle" as defined in the first paragraph and of necessity includes the modification. We conclude that endorsement A287 amended the main policy language to provide that the term "uninsured highway vehicle" or the term "underinsured highway vehicle" shall not include an "insured automobile," and was in effect at the time of Thomas Eisenschenk's accident.

2. Having concluded that the policy clauses excluding insured vehicles apply to both uninsured and underinsured motorist coverage, we now consider whether those clauses are valid. In *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288 (Minn.1983), the Minnesota Supreme Court addressed the question of the validity of clauses which excluded underinsured motorist coverage on family vehicles. In *Myers*, the deceased had been a passenger in owner Stein's automobile when it was involved in a one-car accident. Under the owner's policy, a "covered person" was defined as the named insured, the car owner, and "(a)ny other person while *occupying your covered auto.*" (Emphasis in original.) *Id.* at 290. The owner's policy had an exclusionary clause which provided that an underinsured motor vehicle does not include any vehicle "owned or furnished or available for the regular use of you or any family member." The *Myers* court ruled:

Underinsured motorist coverage is first-party coverage and, in that sense, the

coverage follows the person not the vehicle. Here, however, the decedent passenger's heirs have already collected under the liability coverage of the insurer of the Stein car. To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage. The policy definition defining an "underinsured motor vehicle" to exclude a vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage.

The purpose of underinsured coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile.

*Id.* at 291. In dicta, the *Myers* court observed "Stein's insurance policy is not designed to compensate Stein or his additional insureds from Stein's failure to purchase sufficient liability insurance." *Id.* The exclusionary clause in *Myers* was held to be valid, and underinsured motorist coverage was not available to plaintiff there.

We are unable to factually distinguish the instant case from *Myers*. The plaintiff in *Myers* was a "covered person" under State Farm's policy; Thomas Eisenschenk is a "covered person" under Millers' policy here. Just as the policy in *Myers* was "not designed to compensate (owner) or his additional insureds from (owner's) failure to purchase sufficient liability insurance," *id.* at 291, neither is the Millers' policy designed to protect Dennis Eisenschenk or his additional insureds (of which Thomas is one) from Dennis' failure to purchase sufficient liability insurance.

We are not unmindful of the Minnesota Supreme Court's earlier holding in *Holman v. All Nation Ins. Co.*, 288 N.W.2d 244 (Minn.1980). *Holman* arose under the now repealed underinsured motorist insurance statutes during the period when an offer of underinsured coverage was mandatory. Minn.Stat. § 65B.49(6)(e) (1976) (repealed 1980). Holman was injured in a one-car accident while a passenger in his own insured truck. He collected the maximum coverage amounts under his policy for his injuries, and then sought underinsurance benefits. The court found the insurer failed to make the mandatory offer of underinsured coverage to Holman required by the statute and judicially imposed this coverage, allowing Holman to collect the additional benefits.

*Holman* is not inconsistent with *Myers*, nor is it inconsistent with our holding here. There was no exclusionary clause in the *Holman* policy (nor could there have been inasmuch as there was no underinsured coverage written into that policy). There *was* an exclusionary clause in *Myers*, and the Supreme Court upheld the validity of that clause. There is an exclusionary clause in the *Eisenschenk* policy and we uphold the validity of that clause here.

We are also not unmindful of *Meyer v. Illinois Farmers Ins. Group and Harvey Meyer*, 353 N.W.2d 141 (Minn.Ct.App.), being released concurrently with this opinion. That case arose out of a 1976 accident at a time when an offer of underinsured coverage was mandated by the statute. The insurer in *Meyer* conceded that the mandatory offer had not been made. Therefore, mandatory coverage is judicially imposed under the *Holman* rationale. *Meyer* is controlled by *Holman;* see also *Eugene Hauer, as trustee for the heirs of Jeffrey Lawrence Hauer, deceased*, 352 N.W.2d 406 (Minn., 1984).

### DECISION

Dennis Eisenschenk's underinsured motorist policy with Millers' incorporates the definition of uninsured highway vehicle that validly excludes coverage for an "insured auto," barring Thomas Eisenschenk's recovery under that policy.

We reverse.