**Paul PETRICH, a minor, by Janice M. LEE, his natural parent and guardian, Respondents,**

v.

**HARTFORD FIRE INSURANCE CO., Appellants.**

**No. CX–87–935.**

Court of Appeals of Minnesota.

Nov. 3, 1987.

Review Granted Jan. 20, 1988.

Logan N. Foreman, III, J. Michael Egan, Eckman, Strandness & Egan, P.A., Minneapolis, for respondents.

George Charles Hottinger, Chadwick, Johnson & Condon, P.A., Minneapolis, for appellants.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

Respondent Paul Petrich, a minor, by Janice M. Lee, his natural parent and guardian, brought this declaratory judgment action against appellant Hartford Fire Insurance Company. Following cross motions for summary judgment, the trial court determined that the policy definition of uninsured motorist vehicle was invalid. This appeal is from the grant of summary judgment to Petrich. We affirm in part, reverse in part and remand.

## FACTS

Janice Lee and her husband Gary Lee are named insureds under a personal automobile policy issued by Hartford. The policy describes two vehicles, a 1977 Colt and a 1983 Mitsubishi. Uninsured motorist coverage is provided on each vehicle with limits of $50,000. Not described within the policy, but also owned by the Lees, is a 1927 Ford.

On June 15, 1983, the Ford was occupied by Petrich, Janice Lee's minor son from a previous marriage, and Brian Lee, Gary Lee's son. Petrich lived with the Lees at the time; Brian Lee was merely visiting. The parties dispute who was driving the Ford when it rolled over.

Petrich alleges that Brian Lee was driving and that as a result of Brian Lee's negligence he sustained permanent injuries. Unable to locate any policy of insurance covering either the Ford or Brian Lee, Petrich submitted a claim to Hartford for uninsured motorist benefits. Following denial of that claim, Petrich commenced this declaratory judgment action.

Hartford claimed that Petrich was not entitled to coverage by virtue of the following policy provision:

However, **"uninsured motor vehicle"** does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any **family member.**

The parties stipulated that "Paul Petrich suffered personal injury while *occupying* a 1927 Model T. Ford as a result of that vehicle being involved in a one-car accident." (Emphasis added.) The identity of the driver of the Ford is still in dispute. In response to a motion in limine filed by Petrich, the court agreed to limit this declaratory judgment action to a determination of the coverage issue and reserve the issue of the identity of the driver for arbitration.

The court thereafter granted Petrich's motion for summary judgment and determined that the policy definition of an uninsured motor vehicle was invalid under Minn.Stat. § 65B.49, subd. 4(3) (1982). In its attached memorandum, the court further stated: "The case will now proceed to arbitration for a decision on the issue of damages." This appeal followed entry of judgment.

## ISSUES

1. Did the trial court err in determining that the policy definition of uninsured motor vehicle was invalid because it was more restrictive than the statutory definition?

2. Did the trial court err in reserving the issue of the identity of the driver for arbitration?

## ANALYSIS

### I.

At the time of the accident in June, 1983, the Minnesota No-Fault Act provided:

(3) "Uninsured motor vehicle" means *any* motor vehicle or motorcycle for which a plan of reparation security meeting the requirements of sections 65B.41 to 65B.71 is not in effect.

Minn.Stat. § 65B.49, subd. 4(3) (1983) (emphasis added).

■ Hartford admits that its policy language is more restrictive than this statutory definition because it excludes from the definition of uninsured motor vehicle any

vehicle "[o]wned by or furnished or available for the regular use of you or any **family member."**

In finding the restrictive definition invalid and granting summary judgment, the trial court reasoned:

Minnesota courts have consistently held that first party coverage, such as uninsured motorist benefits, follows the person regardless of where the person is located when injured. *See, Nygaard v. State Farm,* 301 Minn. 10, 221 N.W.2d 151 (1974), *American Motorist Ins. Co. v. Sarvela,* 327 N.W.2d 77 (Minn.1982); *DeVille v. State Farm Automobile Ins. Co.,* 367 N.W.2d 574 (Minn.App.1985). In *Nygaard v. State Farm,* a pre-No-Fault case, the Minnesota Supreme Court specifically held that a policy exclusion concerning uninsured motorist coverage, similar to the exclusion at issue in the present case, impermissibly narrowed the geographic scope of the statutorily required coverage. The later case of *Iverson v. State Farm Automobile Ins. Co.,* 295 N.W.2d 573 (Minn.1980) upheld the *Nygaard* rationale and applied it to questions concerning the No-Fault Act.

Application of the *Nygaard* and *Iverson* rationale to the present case dictates that the insurance policy exclusion must be ruled invalid.

On appeal, the parties discuss the cases relied upon by the trial court more thoroughly. In *Iverson v. State Farm Mutual Automobile Insurance Co.,* 295 N.W.2d 573 (Minn.1980), the deceased owned two cars, only one of which was insured. He died in an accident involving that uninsured vehicle. State Farm denied his widow's claim for economic loss benefits under a policy provision which excluded payment of such benefits when the insured was injured in an owned, but uninsured vehicle. *Id.* at 574. The supreme court held the provision to be invalid as "an unwarranted geographic limitation of statutorily required coverage." *Id.* at 575–76.

In its decision, the court reaffirmed the rationale and holding of *Nygaard v. State*

*Farm Automobile Insurance Co.,* 301 Minn. 10, 221 N.W.2d 151 (1974):

Admittedly, there are differences between uninsured motorist coverage and coverage for economic loss benefits; but because we have held that the basic rationale of *Nygaard*—uninsured motorist coverage protects people not vehicles— also applies to coverage for economic loss benefits, *Nygaard* is good authority for invalidating the exclusion in this case.

*Iverson,* 295 N.W.2d at 576 (citation omitted). *Accord Toomey v. Krone,* 306 N.W. 2d 549, 550 (Minn.1981).

Hartford nevertheless argues that *Iverson* and *Nygaard* have been modified by cases involving underinsured motorist coverage.[1] In *Myers v. State Farm Mutual Automobile Insurance Co.,* 336 N.W.2d 288 (Minn.1983), the deceased passenger was involved in a one-car accident. The deceased's trustee collected the liability policy limits of the driver and the liability policy limits of the owner of the involved automobile. The trustee then attempted to collect underinsured motorist benefits under the owner's policy, which contained an exclusion for any vehicle "owned by or furnished or available for the regular use of you or any family member." *Id.* at 290 (emphasis omitted). Upholding the exclusion, the supreme court reasoned:

[T]he decedent passenger's heirs have already collected under the liability coverage of the insurer of the [owner's] car. To now collect further under the same insurer's underinsured motorist coverage would be to convert the underinsured motorist coverage into third-party insurance, treating it essentially the same as third-party liability coverage. The policy definition defining an "underinsured motor vehicle" to exclude a vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage.

*Id.* at 291.

*Myers* has been followed by this court. In *Eisenschenk v. Millers' Mutual Insurance Ass'n,* 353 N.W.2d 662 (Minn.Ct.App.

---

**1.** It should be noted that these underinsured motorist cases do not overrule or even cite *Iver-*

*son* or *Nygaard.* Nor do these cases discuss the general rule against geographical limitations.

1984), the insured, a passenger in his father's car, was involved in a one-vehicle accident. After collecting the liability limits on the involved automobile, he attempted to collect underinsured motorist benefits under that same policy and under a policy covering a non-involved vehicle owned by his father. Citing *Myers*, this court found that a family exclusion in the policy was valid and that the insured could not convert underinsured motorist coverage to liability insurance. *Eisenschenk*, 353 N.W.2d at 665.[2]

In *Linder v. State Farm Mutual Automobile Insurance Co.*, 364 N.W.2d 481 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. May 1, 1985), a minor was injured in a car driven by her brother and owned by her father. She settled for the full liability limits carried by her father on the involved vehicle. Recovery was then sought under separate policies issued to her father covering two non-involved vehicles. Enforcing exclusionary provisions in those policies, this court stated that "to avoid [those exclusionary clauses] would be to allow her to convert inexpensively-purchased underinsured motorist coverage into liability coverage. This would be contrary to the courts' decisions in *Myers* and *Eisenschenk*." *Linder*, 364 N.W.2d at 483.

We believe that the reasoning of *Myers, Eisenschenk*, and *Linder* is not controlling in a case involving uninsured motorist coverage. Unlike uninsured motorist coverage, underinsured motorist coverage was not statutorily mandated in 1983 and there was no definition of an underinsured motor vehicle in the No-Fault Act at that time.

This court has characterized the *Myers* line of cases as a "carefully carved-out exception" having limited application. *DeVille v. State Farm Mutual Automobile Insurance Co.*, 367 N.W.2d 574, 576 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. July 26, 1985). In *DeVille*, the injured person was a passenger on her husband's motorcycle when he drove into the back of a stopped car. The injured party collected the liability limits from the policy covering

the motorcycle, and then claimed underinsured benefits from her own personal car insurance policy. Her claim was denied based on the same exclusionary definition of underinsured motor vehicle.

Under those facts, this court invalidated that definition:

> The exception that has emerged is clearly limited to circumstances where a plaintiff is attempting to convert underinsured motorist (first-party) coverage into liability (third-party) coverage. In all three of the cases [*Myers, Eisenschenck, Linder*] the plaintiff had first collected liability limits from the tortfeasor and then attempted to collect underinsured motorist benefits on the same or additional policies carried by the tortfeasor himself. The courts found this to be an impermissible conversion of the underinsured motorist coverage purchased by the tortfeasor into what was, in effect, additional liability limits for that tortfeasor. We cannot extend that rationale to the facts of this case.

*DeVille*, 367 N.W.2d at 577.

Under *DeVille*, an impermissible conversion occurs when an injured person collects first as a third party under the liability limits of a policy covering the tortfeasor and then attempts to collect as a first party under the same policy or other policies covering the tortfeasor. This type of conversion is virtually impossible in a one-car accident involving an uninsured vehicle because the injured party will never be able to collect both liability coverage and uninsured motorist coverage and will never be able to collect both as a third party and as a first party.

Hartford argues that if the exclusion in this case is held invalid, multiple car families will be encouraged to insure only one car. An identical argument was rejected in *Nygaard*, where the supreme court stated that the uninsured motorist statute placed no

> geographic limits on coverage and does not purport to tie protection against uninsured motorists to occupancy of the

---

**2.** Although the policy exclusion in *Eisenschenk* also applied to uninsured vehicles, the case only dealt with underinsured motorist coverage.

insured vehicle. Since our statute requires this broad coverage "for the protection of persons," we must leave to the legislature the sanctioning of any exceptions dependent on the location of an insured.[3]

*Id.* 301 Minn. at 19, 221 N.W.2d at 156 (quoting Minn.Stat. § 65B.22, subd. 3 (1974)).

## II.

Undoubtedly, if Paul Petrich was the driver of the Ford at the time of the accident, he would be the tortfeasor and would be precluded from recovering. Hartford contends that the trial court erred in reserving the issue of the identity of the driver for arbitration and seeks a remand of this issue to the trial court.

■ Hartford argues that the issue is not amenable to arbitration and contrary to the following express language of the policy:

[Insuring agreement]
[Hartford] will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury[.]

\* \* \* \* \* \*

[Arbitration clause]
If [Hartford] and a **covered person** do not agree:
    1. Whether that person is legally entitled to recover damages under this Part; or
    2. As to the amount of damages; either party may make a written demand for arbitration.

Hartford argues that the latter arbitration clause presupposes that the identity of the owner or operator of the uninsured vehicle has already been established. We agree.

The issue of the identity of the driver is one of the "factual preconditions" referred to in *U.S. Fidelity and Guaranty Co. v. Fruchtman*, 263 N.W.2d 66 (Minn.1978). In *Fruchtman*, the supreme court held that where insurance coverage is preconditioned on establishing certain facts, the factual dispute should be tried and resolved by the trial court and, if the preconditions are not established, then the policy does not provide coverage and arbitration is unauthorized. *Id.* at 71. Following *Fruchtman*, we remand this matter to the trial court to take evidence and make findings on this "factual precondition" to coverage. *Cf. Myers*, 336 N.W.2d at 291 (under substantially similar arbitration clause, remand to the trial court was unnecessary where the "factual preconditions" were uncontested because it was undisputed that the decedent insured was a passenger in a car involved in a single-vehicle accident).

## DECISION

The trial court's grant of summary judgment is affirmed. Reservation of the issue of the identity of the driver for arbitration is reversed, and the matter is remanded to the trial court to make findings on this issue. Should the trial court determine that Petrich was a passenger of the vehicle at the time of the accident, the matter should then proceed to arbitration for a determination of damages.

Affirmed in part, reversed in part and remanded.

HUSPENI, Judge (dissenting).

I respectfully dissent from the majority's decision in the first issue, would reverse the trial court, and would not reach the second issue.

While I agree that *Myers, Eisenschenck* and *Linder* each involved an underinsured vehicle, not an uninsured one, and that underinsured coverage was not mandated by statute in 1983, I find these to be insuf-

---

**3.** In 1985, the legislature amended Minn.Stat. § 65B.49 by repealing subdivision 4 and adding subdivision 3a, which states in pertinent part:
    (7) The uninsured and underinsured motorist coverages required by this subdivision do not apply to bodily injury of the insured while occupying a motor vehicle owned by the insured, unless the occupied vehicle is an insured motor vehicle.

1985 Minn.Laws 1st Spec.Sess. ch. 10, § 68. At least one commentator has opined that this newly enacted exclusion only applies to *owners* of uninsured vehicles and that other family members would still be entitled to recover. Hauer & Fargione, *Uninsured and Underinsured Motorist Coverage*, in The No-Fault Act: Settlements and Government Benefits § 2, at 6 (Minnesota Institute of Legal Education (1985)).

ficient bases upon which to distinguish that trilogy of cases from the present one. In *Myers, Eisenschenck* and *Linder*, exclusionary clauses were upheld, thereby prohibiting a plaintiff from "convert[ing] underinsured motorist (first party) coverage into liability (third party) coverage." *DeVille* at 577. The majority reasons that such impermissible conversion is "virtually impossible in a one-car accident involving an uninsured vehicle because the injured party will never be able to collect both liability coverage and uninsured motorist coverage and will never be able to collect both as a third party and as a first party." I submit that to the extent the respondent benefits from that analysis, the analysis is flawed.

Respondent elected to carry liability and uninsured motorist coverages on two of his three vehicles. The vehicle involved in the accident was uninsured. That vehicle now becomes for respondent the "uninsured" vehicle upon which he bases his claim for uninsured motorist coverage. Under the facts of this case, the individual deemed to be an "insured" under the policy is indistinguishable from the individual designated as "uninsured." This, I submit, is perhaps a more egregious situation than that which was condemned in *Myers, Eisenschenck* and *Linder*, where at least a nominal amount of liability coverage had been purchased, and the insured sought to convert his underinsured motorist coverage to liability coverage only after exhaustion of that purchased liability coverage.

Finally, the majority cites *Nygaard* in rejecting appellant's argument that "if the exclusion in this case is held invalid, multiple car families will be encouraged to insure only one car." The *Nygaard* court observed:

The argument can be made that a family owning two motor vehicles should not be permitted to pay for insurance on only one and recover benefits for injuries sustained while operating the other. (Citations omitted). However, the uninsured motorist statute contains no provisions withholding protection for an insured for owning one vehicle which is not insured. Rather, *the purpose of our statute is to provide the insured with financial pro-*

*tection against uninsured motorists whose negligence results in personal injury to him.*

*Nygaard*, 301 Minn. 18–19, 221 N.W.2d 156 (emphasis added).

I submit that the *Nygaard* court envisioned two participants in an accident; an insured who neglected to insure one of his vehicles and an uninsured tortfeasor against whom the insured sought protection through his uninsured motorist coverage. Those two participants merge into one in this case and the *Nygaard* rationale is inapplicable. Under the majority holding, were it not for recent statutory amendments cited by the majority, we could expect that multiple car families would, indeed, decide to insure fewer than all their vehicles.