425 S.E.2d 595

**Deborah THOMAS, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, a corporation, Defendant.**

**No. 20927.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 1992.

Decided Dec. 16, 1992.

Mark Jenkinson, James A. McKowen, Hunt & Wilson, Charleston, for plaintiff.

Gray Silver III, Patrick J. Nooney, Steptoe & Johnson, Martinsburg, for defendant.

McHUGH, Chief Justice:

This case is before the Court upon certified questions of the Circuit Court of Berkeley County. The plaintiff is Deborah Thomas. The defendant is Nationwide Mutual Insurance Company.

## I

On July 8, 1990, the plaintiff and her husband were driving on State Route 9 when their 1982 Chevrolet Chevette went off the road and struck a utility pole at a high rate of speed. The plaintiff's husband was driving at the time of the accident. No other vehicles were involved in the accident.

The plaintiff sustained multiple fractures to her hip and legs, which required extensive surgery and rigorous physical therapy.[1] The plaintiff has been medically advised that the severity of her injuries will leave her with some permanent impairment. The plaintiff's total medical bills currently exceed $90,000.

At the time of the accident, the plaintiff and her husband had two vehicles, the Chevette, and a 1984 Chevrolet Citation, insured with the defendant, under a single insurance policy. Under the terms of the policy, the vehicles carried liability and underinsurance limits of $100,000/$300,000 each. The defendant paid the full $100,000 *liability* coverage to the plaintiff on the Chevette, but denied coverage under the *underinsurance* provisions of the policy on either vehicle.

Accordingly, this declaratory judgment action was filed by the plaintiff to determine the rights and obligations of the parties. Three questions were certified to this Court by the circuit court:

1.  May an insured who is covered simultaneously by two or more underinsured motorist policy endorsements on multiple vehicles *under the same policy* recover under all of such endorsements up to the aggregated or stacked limits of the same, or up to the amount of judgment obtained against the underinsured motorist, whichever is less, as a result of one accident and injury?

2.  Whether an insured can stack such underinsurance coverage on top of the limits of liability coverage previously paid *under the same policy* for the same accident up to the aggregated or stacked limits of the same, or up to the amount of judgment obtained against the underinsured motorist, whichever is less?

3.  Whether in the instant case the following definitional exclusion (known as the Family Use Exclusion) is a valid exclusion in light of the current law and public policy of the State of West Virginia?

'2.  We will not consider as an underinsured motor vehicle: e) any vehicle owned by or furnished for the regular use of you or a relative.'

(emphasis in original)

We believe that the primary issue in this case is the third certified question. Accordingly, we first address that question.[2]

## II

The third certified question in this case deals with the "family use exclusion" in the insurance policy, specifically, the validity of such an exclusion.

The circuit court answered this question by stating that such an exclusion is valid.

The insurance policy at issue in this case, in the "underinsured motorists" section, contains the following provisions:

**We** will pay compensatory damages as a result of **bodily injury** and/or **property damage** suffered by **you** or a **relative** and due by law from the owner or driver of an **underinsured motor vehicle.** Damages must result from an accident arising out of the:

1.  ownership;
2.  maintenance; or
3.  use;

of the **underinsured motor vehicle.**

(emphasis in original) The policy goes on to state, in the underinsured motorists "definition" section, the following:

1.  An **underinsured motor vehicle** is a **motor vehicle** with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either:

a) less than limits the **insured** carried for underinsured motorists coverage, or

b) has been reduced by payments to others injured in the accident to limits

---

1.  The plaintiff's husband was not seriously injured.

2.  "[U]pon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered." *City of Fairmont v. Retail, Wholesale & Dept. Store Union,* 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980).

less than limits the **insured** carried for underinsured motorists coverage.

2. **We** will not consider as an **underinsured motor vehicle:**

. . . .

e) any vehicle owned by or furnished for the regular use of **you** or a **relative.**

(emphasis in original)

Provision "2(e)," is commonly referred to as the family use exclusion.

In *Myers v. State Farm Mutual Automobile Ins. Co.*, 336 N.W.2d 288 (Minn. 1983), the Supreme Court of Minnesota held that under that state's statutory provisions in effect at the time:

Underinsured motorist coverage is first-party coverage and, in that sense, the coverage follows the person not the vehicle. Here, however, the decedent passenger's heirs have already collected under the *liability* coverage of the insurer of the Stein car. To now collect further under the same insurer's *underinsured* motorist coverage *would be to convert the underinsured motorist coverage into third-party insurance,* treating it essentially the same as third-party liability coverage. The policy definition defining an 'underinsured motor vehicle' to exclude a vehicle owned by or regularly furnished or available to the named insured properly prevents this conversion of first-party coverage into third-party coverage.

The purpose of underinsured coverage is to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile.

336 N.W.2d at 291 (emphasis supplied).

In *Eisenschenk v. Millers' Mutual Ins. Assoc.*, 353 N.W.2d 662 (Minn.Ct.App.1984), the Court of Appeals of Minnesota followed the lead of that state's supreme court, in upholding the validity of the family use exclusion. The *Eisenschenk* court focused on the insured's failure to purchase additional insurance. In *Eisenschenk,* the plaintiff was injured in a single car accident in which he was a passenger in a car owned by his father and driven by his sister. The pertinent policy excluded from the definition of "uninsured" vehicle "an automobile furnished for the regular use of the named insured or of any person resident in the same household who is related to the named insured by blood, marriage or adoption[.]" 353 N.W.2d at 663.

The court in *Eisenschenk* went on to reiterate the points made in *Myers:*

We are unable to factually distinguish the instant case from *Myers.* The plaintiff in *Myers* was a 'covered person' under State Farm's policy; Thomas Eisenschenk is a 'covered person' under Millers' policy here. Just as the policy in *Myers* was 'not designed to compensate (owner) or his additional insureds from (owner's) failure to purchase sufficient liability insurance,' [336 N.W.2d] at 291, neither is the Millers' policy designed to protect Dennis Eisenschenk or his additional insureds (of which Thomas is one) from Dennis' failure to purchase sufficient liability insurance.

353 N.W.2d at 665.

In *Fidelity & Casualty Co. v. Streicher,* 506 So.2d 92 (Fla.Dist.Ct.App.), *review denied,* 515 So.2d 231 (Fla.1987), the court rejected the plaintiff's public policy argument that underinsurance benefits should be stacked on liability coverage. In *Streicher,* the plaintiff was seriously injured in an automobile accident wherein she was a passenger in her family's car. The defendant Fidelity had issued a policy which provided liability and uninsured motorist coverage on three family vehicles, including the one involved in the accident. The defendant Fidelity paid the plaintiff the *liability* policy limits of $100,000. Although the policy also included underinsured motorist coverage of $100,000 on each vehicle, "the policy's definition of uninsured or underinsured motor vehicle excluded any vehicle owned by the insured or a relative." 506 So.2d at 93.

In rejecting the plaintiff's contention that she be entitled to recover all available underinsured motorist benefits because her damages exceeded the liability coverage, the Florida District Court of Appeal held:

The plaintiff argues that to deny her UM [underinsured motorist] benefits under the Fidelity policy would contravene the public policy expressed in the statute. But we do not feel it was the intent of the legislature to require that an automobile insurance policy provide both liability and underinsured motorist coverage to the same injured party. The result which the plaintiff seeks in this case would have the effect of doubling the limits of liability under the Fidelity policy. We are confident that Fidelity intended to provide limited liability coverage and to provide underinsured motorist coverage, but not to the same injured party, and that Fidelity charged a premium accordingly. We do not believe that Fidelity should be required to double, in effect, its liability coverage under the circumstances of this case.

506 So.2d at 93.

Some courts have declared the family use exclusion invalid on public policy grounds, while other courts have upheld its validity because to declare it invalid would abrogate the uninsured motorist insurance statute. *See* Martin J. McMahon, Annotation, *Validity, Under Insurance Statutes, of Coverage Exclusion for Injury to or Death of Insured's Family or Household Members*, 52 A.L.R. 4th 18, 28 § 3 (1987) (collecting cases). *See also* 3 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 35.7 (2d ed. 1992).[3]

It has been pointed out that

it follows logically that a claimant cannot recover third party liability benefits and underinsured motorist coverage from the same policy of insurance. Rather, the recovery of underinsured motorist coverage is dependent on the existence of two policies of insurance: the tortfeasor's policy and the claimant's policy. When a tortfeasor is underinsured, the claimant recovers third party liability benefits from the tort-feasor's insurance and supplements this recovery with the underinsured motorist benefits available through his or her *own* policy of insurance.

*Newkirk v. United Services Automobile Assoc.*, 388 Pa.Super. 54, 564 A.2d 1263, 1268 (1989), *appeal denied*, 528 Pa. 624, 597 A.2d 1153 (1990) (emphasis in original). *See also Wolgemuth v. Harleysville Mutual Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145, *appeal denied*, 520 Pa. 590, 551 A.2d 216 (1988).[4]

---

**3.** The plaintiff relies on the Washington case of *Tissell v. Liberty Mutual Ins. Co.*, 115 Wash.2d 107, 795 P.2d 126 (1990), where the plaintiff was injured when her husband drove the family car off the road and into a river. After exhausting the liability coverage of the single insurance policy, the plaintiff sought to be covered by the uninsured endorsement. In holding for the plaintiff, the Supreme Court of Washington looked to the fundamental public policy underlying the uninsured motorist statutory scheme, that the purpose of such is to fully compensate victims of automobile accidents. *See* syl. pt. 5, *Pristavec v. Westfield Ins. Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990). The Washington court invalidated the family member exclusion in that case, holding that it violates public policy.

The defendant, on the other hand, points out the holding of a Washington appeals court, decided two years prior to *Tissell*, but not even mentioned in *Tissell*. In *Holz v. North Pacific Ins. Co.*, 53 Wash.App. 62, 765 P.2d 1306 (1988), the court held that the family member exclusion does not violate public policy, and that any attempt to stack the uninsured coverage onto the liability coverage would, in essence, transform the less expensive uninsured coverage into liability insurance.

Obviously, the holding of a lower appeals court would not be binding upon that state's supreme court. In any event, rather than attempting to reconcile these decisions, we focus above on the rationale of other courts that have upheld the family use exclusion as valid because we believe that this rationale is well supported in logic and sound legal principles.

**4.** In *Thompson v. Nationwide Mutual Ins. Co.*, Civil Action No. 2:89–0139, 1991 WL 476220 (S.D.W.Va.1991), the United States District Court for the Southern District of West Virginia was faced with the question of application of a family use exclusion. That court predicted that this Court, if faced with the same question, would uphold the validity of the family use exclusion: "Notwithstanding the sound and well-recognized public policy of full indemnification underlying West Virginia's uninsured/underinsured motorist statute, this court does not believe that West Virginia's Supreme Court of Appeals intended for its ruling in [*State Automobile Mutual Ins. Co. v. [Youler,]* 183 W.Va. 556, 396 S.E.2d 737 (1990) ] to be construed so broadly." *Thompson,* at 21.

Recently, in *Alexander v. State Automobile Mutual Ins. Co.*, 187 W.Va. 72, 415 S.E.2d 618 (1992), we addressed a situation where a guest passenger attempted to collect underinsured benefits, despite not contracting for them, nor being the intended beneficiary. We summarized our holding that such benefits could not be collected by the guest passenger as follows:

> In short, underinsured motorist coverage is intended to compensate parties for injuries caused by other motorists who are underinsured. As long as the insured owns both the underinsured motorist policy in question and the vehicle, then the insured's vehicle will not be considered an underinsured motor vehicle for purposes of the insured's own underinsured motorist coverage. Because an underinsured motorist policy is intended to benefit the person who bought the policy, we conclude that underinsured motorist coverage is not available to a guest passenger unless the statute or policy language specifically provides for such coverage.

187 W.Va. at 79, 415 S.E.2d at 625 (footnote omitted). *Accord, Starr v. State Farm Fire & Casualty Co.*, 188 W.Va. 313, 423 S.E.2d 922 (1992).

The same rationale would apply to the exclusion at issue in this case, namely, the family use exclusion. We believe that to declare such an exclusion invalid would emasculate this state's underinsured motorist statutory provisions, and, in effect, be transforming the underinsured coverage into liability coverage.[5]

■ *W. Va. Code*, 33–6–31(k) [1988] provides: "Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating such terms, conditions and exclusions as may be consistent with the premium charged." In syllabus point 3 to *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989), we held: "Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." *Accord,* note 6, *infra.*

Because recovery by a plaintiff of underinsured motorist benefits is dependent on the existence of two policies, the tortfeasor's and the plaintiff insured's, when a tortfeasor is underinsured, the plaintiff insured normally recovers third-party liability benefits from the tortfeasor's insurance coverage and supplements this recovery, if necessary, with underinsured motorist benefits through his or her own insurance. A family use exclusion, which excludes from the definition of "underinsured motor vehicle" any vehicle owned by or furnished for the regular use of the insured or a relative, or in like terms, has the purpose of preventing underinsured coverage from being converted into additional liability coverage, because when the exclusion is applied, it is the liability coverage that has been paid for by the insured, and not underinsured coverage. Therefore, such an exclusion would not violate the public policy of full compensation of an insured.

■ Accordingly, we hold that when an insurer issues an automobile insurance policy which provides both liability and underinsured motorists coverage, but which policy contains what is commonly referred to as a "family use exclusion" for the underinsured motorist coverage, and when, in a single car accident, the passenger/wife re-

---

5. We also note the danger in allowing underinsured coverage to be transformed into liability coverage, thus, allowing dual recovery, as cautioned by the Washington Supreme Court: "This result would cause [insurers] to charge substantially more for underinsured motorist coverage in order to match the cost of that coverage with the presently more expensive liability coverage. This increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimal cost." *Millers Casualty Ins. Co. v. Briggs*, 100 Wash.2d 1, 665 P.2d 891, 895 (1983).

ceives payments under the liability coverage for the negligence of the driver/husband, such exclusion is valid and not against the public policy of this state. That exclusion, which excludes from the definition of "underinsured motor vehicle" any automobile owned by or furnished for the regular use of the insured or a relative, has the purpose of preventing underinsured coverage from being converted into additional liability coverage.

Therefore, the third certified question is answered in the affirmative.

### III

Next, we address the first question certified to us by the circuit court. *See supra.* The circuit court answered this question in the affirmative, based upon this Court's holdings in *State Automobile Mutual Ins. Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990), and *Pristavec v. Westfield Ins. Co.*, 184 W.Va. 331, 400 S.E.2d 575 (1990).

In *Youler* and *Pristavec*, we held that the public policy of full compensation of an insured prevails over certain provisions in an insurance policy that would prohibit the insured from recovering under the aggregated limits of two or more uninsured/underinsured policy endorsements. *See Youler*, syl. pts. 3 and 4; *Pristavec*, syl. pt. 5.

*W.Va.Code*, 33-6-31(b) [1988], provides, in relevant part, that a motor vehicle liability insurance policy

shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy. 'Underinsured motor vehicle' means a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either (i) less than limits the insured carried for underinsured motorists' coverage, or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage shall be reduced by payments made under the insured's policy or any other policy.

However, in granting review of the questions in this case, we suspended submission of this case pending the Court's decision in *Russell v. State Automobile Mutual Ins. Co.*, 188 W.Va. 81, 422 S.E.2d 803 (1992), wherein this issue was discussed.

In syllabus point 5 to *Russell*, we held:

West Virginia Code § 33-6-31 (1992) does not forbid the inclusion and application of an anti-stacking provision in an automobile insurance policy where a single insurance policy is issued by a single insurer and contains an underinsured endorsement even though the policy covers two or more vehicles. Under the terms of such a policy, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement.

The reach of *Youler* and *Pristavec* was not extended in *Russell* for the obvious reason that in *Russell*, a single insurance policy was involved. In *Russell*, we reasoned that

because of the multi-car discount given, it is obvious that the insured appellee bargained for only one policy and only one underinsurance motorist coverage endorsement. This multi-car discount is of particular import since it signifies that the [insured] was receiving a reduced rate on his automobile insurance in return for taking out only one policy instead of two. Meanwhile, the insurer was assuming an increased risk of injury

which could occur while the insured was occupying the second vehicle as consideration for the second premium. The insured was therefore receiving the benefit of that which he bargained for and should not receive more. Had this multicar discount not been given by the insurer and had the insured paid a full premium for both vehicles, a different result may have been reached by this Court.

188 W.Va. at 85, 422 S.E.2d at 807.[6]

In this case, there was but a single vehicle involved in the accident, and a single insurance policy, under which the liability insurance limits have been paid to the plaintiff insured. The plaintiff, in light of our decision in *Russell*, all but concedes this. Accordingly, the first certified question is answered in the negative.

### IV

In light of our resolution of the third and first certified questions, respectively, it is not necessary to address the second question in detail. It is sufficient to note that the second question was correctly answered in the negative by the circuit court.

### V

The certified questions having been answered, this case is dismissed from the docket of this Court, and remanded to the Circuit Court of Berkeley County for proceedings consistent with this opinion.

Certified questions answered.

---

6. In *Russell*, we adhered to the following principle: "Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. pt. 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989). *See W.Va.Code*, 33–6–31(k) [1988].