Jonathan SCHUPP, et al., Respondents,

v.

UNITED FIRE & CASUALTY COMPANY, Appellant,

Ross Nesbit Agencies, Inc., et al., Defendants.

No. A12–0453.

Court of Appeals of Minnesota.

Oct. 1, 2012.

Timothy R. Schupp, Gaskins, Bennett, Birrell, Schupp, LLP, Minneapolis, MN; and Kevin S. Carpenter, Carpenter Injury Law Office, St. Cloud, MN, for respondents.

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN; and Lawrence M. Rocheford, Michael P. Goodwin, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for appellant.

Considered and decided by STAUBER, Presiding Judge; CHUTICH, Judge; and HARTEN, Judge.*

## OPINION

CHUTICH, Judge.

Appellant United Fire & Casualty Company (United Fire) challenges the district court's grant of summary judgment to respondents Jonathon Schupp and Northern Pine Lodge, Inc. United Fire contends that the district court improperly nullified an automobile exclusion in Northern Pine Lodge's commercial general liability insurance policy after erroneously determining that United Fire failed to comply with Minnesota law when renewing the lodge's policy. Because we conclude that United Fire complied with all statutory requirements and properly renewed the policy, we reverse.

## FACTS

The facts underlying this dispute over insurance coverage for claims arising out of an automobile accident are as follows.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Jonathon Schupp is the owner, general manager, and sole shareholder of Northern Pine Lodge, Inc. (the lodge), a resort on Potato Lake in Hubbard County. Beginning in 2003, the lodge purchased commercial general liability insurance through Ross Nesbit Agencies and insurance agent Tom Rykken. Since 1986, Schupp maintained a separate policy, through a different agency, for automobile insurance coverage.

The lodge's commercial insurance policy, procured by the Nesbit agency, was issued by United Fire and included general liability coverage, which insured against losses arising from bodily injury or property damage. At all times since the lodge first bought the policy in 2003, the Commercial General Liability Coverage Form contained Exclusion 2.g. Exclusion 2.g. specifically excludes from coverage losses resulting from bodily injury or property damage arising out of the "ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured."[1] The lodge renewed this policy every year after 2003, including the relevant time period of July 2, 2009, through July 2, 2010.

Schupp testified at his deposition that he received and read a complete copy of his commercial insurance policy when it was first issued by United Fire in 2003, and that he would "page through" the renewal documents each year. He claimed that he had never seen Exclusion 2.g., and he assumed the commercial policy would cover

any losses arising from the use of an automobile above and beyond his separate auto insurance. Neither Rykken nor anyone else at Ross Nesbit ever told him that he had auto coverage under the commercial policy.

Schupp admitted that he did not recall ever speaking with agent Rykken about auto coverage when he first purchased the policy in 2003. Rykken confirmed that he received no information about Schupp's automobiles because "[Schupp] wasn't interested in having me quote his autos." He also testified that the lodge did not have an umbrella policy with United Fire, and that an insurer will not generally write umbrella coverage on an automobile when it does not write the primary coverage.

Unlike with new policies, United Fire does not give the customer a full copy of its policy with every applicable form when it renews a policy. Instead, United Fire asserts that it is customary practice in the insurance industry, and required by law, that the insurer provide an insured with a declarations page and with copies of any forms that change or modify the policy. When Northern Pine Lodge renewed its policy in 2009, it received 91 pages of documents from United Fire.[2]

These documents included a 15–page "Commercial General Liability Coverage Part." The front page noted the renewal period and the premium amount for the commercial general liability insurance coverage. Next was a page entitled "Forms

---

**1.** According to United Fire, the commercial general liability policy at issue in this case was identical to the standard form issued by the Insurance Services Office. Since 1955, this standard form has excluded bodily injury and property damage arising from the use of automobiles. *See* 22 Britton D. Weimer, Clarance E. Hagglund & Andrew F. Whitman, *Minnesota Practice* § 5:15 (2010). The commercial general liability policy is analogous to a homeowner's insurance policy, which is

commonly known to exclude automobile coverage. *See id.* §§ 9:1, 9:7.

**2.** Rykken, the lodge's insurance agent, testified that the package of documents sent to Schupp and the lodge in 2009, which Rykken received from United Fire, was the "complete policy" that covered Schupp and the lodge from July 2009 through July 2010.

Supplemental Declarations," which listed the various coverage and exclusion forms applicable to the policy, including the Commercial General Liability Coverage Form, noting with an asterisk any form that was added or amended since the previous policy period. The remaining pages of the "Commercial General Liability Coverage Part" were copies of each amended provision.

Exclusion 2.g., the automobile exclusion at issue here, appeared in the Commercial General Liability Coverage Form. But because the Commercial General Liability Coverage Form had not been modified or amended since 2007, a copy of it was not attached to the 2009 renewal. All declarations and forms for the lodge's policy were available at all times on United Fire's website, and a page in the renewal policy so informed the lodge.

The lodge owned a 1989 Plymouth Voyager minivan. In 2009, Schupp again purchased an automobile policy through another agency to cover the minivan. On August 12, 2009, Schupp was driving the minivan in Chisago County when he collided with a motorcycle. Both of the riders on the motorcycle were killed, and wrongful-death claims were brought against Schupp and the lodge. Schupp's and the lodge's auto insurer partially paid the claims, but the next-of-kin of the deceased sought additional amounts from Schupp and the lodge to settle their claims.

Citing the commercial general liability policy, the lodge sought additional coverage from United Fire for damages arising from the accident, above and beyond the auto insurance coverage. Referencing Exclusion 2.g., United Fire denied coverage under the commercial general liability policy because the accident involved an auto-

mobile. Schupp and the lodge sued United Fire, bringing claims for estoppel and declaratory relief.[3] The parties brought cross-motions for summary judgment; the district court granted Schupp's and the lodge's motion, and denied United Fire's motion. The district court concluded that United Fire could not enforce Exclusion 2.g. against Schupp and the lodge because United Fire did not comply with statutory requirements when it renewed the policy in 2009.

The district court awarded Schupp and the lodge damages in the amount of $122,317 representing attorney fees incurred in litigating this declaratory judgment action against United Fire and Nesbit, and also attorney fees incurred in litigating the underlying wrongful-death actions. This appeal followed.

## ISSUE

In renewing the commercial general liability insurance policy of a small business, does Minn.Stat. § 60A.08, subd. 1, require an insurer to physically attach every term and condition of the insured's policy upon renewal, even when no coverage changes have occurred to portions of the policy?

## ANALYSIS

We review de novo the district court's decision to grant summary judgment. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* 790 N.W.2d 167, 170 (Minn.2010). A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

---

3. The lodge also sued Itasca Region (the insurance company that issued the lodge's auto insurance) and Ross Nesbit Agencies under various theories. Those claims are not at issue in this appeal.

either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03.

On appeal from a grant of summary judgment, we "review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening,* 796 N.W.2d 503, 504 (Minn.2011). In doing so, we "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Here, no material facts are disputed, and all parties agree that if Exclusion 2.g. is enforceable, it precludes coverage for the losses arising from the automobile accident.

The district court found that United Fire could not enforce Exclusion 2.g. because it concluded that Minn.Stat. § 60A.08, subd. 1, does not permit incorporation of policy provisions by reference. Accordingly, it found that the statute "nullified" the automobile exclusion, Exclusion 2.g., because it was not incorporated in the renewed policy.

We review issues of statutory interpretation de novo. *Swenson v. Nickaboine,* 793 N.W.2d 738, 741 (Minn.2011). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous." *Am. Family Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). Words and phrases in statutes must be construed "according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08(1) (2010). If statutory language is unambiguous, we "interpret the statute's text according to its plain language."

*Brua v. Minn. Joint Underwriting Ass'n,* 778 N.W.2d 294, 300 (Minn.2010).

Minn.Stat. § 60A.08, subd. 1 provides:

A statement in full of the conditions of insurance shall be incorporated in or attached to every policy, and neither the application of the insured nor the bylaws of the company shall be considered as a warranty or a part of the contract, except in so far as they are so incorporated or attached.

We initially note that section 60A.08, subdivision 1, refers to "every policy," and not just new policies. Thus, United Fire was required to comply with the statute each time it renewed the lodge's policy. The question thus becomes whether "[a] statement in full of the conditions of insurance" was "incorporated in or attached to" the renewal documents that United Fire sent to the lodge in 2009. The district court found that listing the applicable forms on the "Forms Supplemental Declarations Page" was not sufficient to meet the "incorporated in or attached to" language of section 60A.08, subdivision 1. We disagree.

Even though this statutory language has been in effect in Minnesota for almost a century,[4] little caselaw interprets section 60A.08, subdivision 1, and no precedent guides our analysis of the "incorporated in or attached to" language in the context of a policy renewal. Because we must interpret statutory terms according to their common usage, we turn to dictionary definitions of "incorporate." *See Brandt v. Hallwood Mgmt. Co.,* 560 N.W.2d 396, 400 (Minn.App.1997) (using dictionary to interpret statutory term "construction"), *review denied* (Minn. June 11, 1997); *Fiveland v. Bollig & Sons, Inc.,* 436 N.W.2d 478, 480

---

**4.** The statutory language of section 60A.08, subdivision 1, was originally enacted in 1913 and was codified at Minn. Gen. Stat. § 3292. It was re-codified into chapter 60A in 1967.

*See* 1967 Minn. Laws ch. 395, art. 1, § 8, at 618. The language has not been amended since its original enactment in 1913.

(Minn.App.1989) (using dictionary to interpret statutory term "defective"), *review denied* (Minn. Apr. 24, 1989).

Black's Law Dictionary defines "incorporate" as "[t]o combine with something else <incorporate the exhibits into the agreement>" and "[t]o make the terms of another (esp. earlier) document part of a document by specific reference <the codicil incorporated the terms of the will>." *Black's Law Dictionary* 834 (9th ed.2009); *see also American Heritage Dictionary* 915 (3d ed.1992) (defining "incorporate" as "[t]o unite (one thing) with something else already in existence" and "[t]o cause to merge or combine together").

■ The district court found that the legislature's choice of the words "incorporated *in* " rather than "incorporated *by* " in section 60A.08, subdivision 1, was "telling," in concluding that United Fire's renewal documents did not sufficiently set forth the entire policy. But based on the dictionary definitions of "incorporate," we do not see any material distinction between the prepositions "in" and "by." Therefore, we conclude that section 60A.08, subdivision 1, is not ambiguous and does *not* require an insurer to physically attach each and every term and condition of insurance to a renewal policy; rather, the insurer may comply with the section by incorporating terms and forms by reference.

■ Applying this construction, the Commercial General Liability Coverage Form that contained Exclusion 2.g. was clearly "incorporated in" the renewal documents by specific reference on the "Forms Supplemental Declarations Page." The declarations page specifically listed the Commercial General Liability Coverage Form. Since no asterisk appeared next to the title of the form, an insured would have notice that the form remained unchanged from the previous year.

In reviewing the renewal of the lodge's policy, Schupp had only to look at that page, note that the Commercial General Liability Coverage Form, last amended in 2007, still applied to his policy, and refer back to that form, a copy of which he received twice, once when he first purchased the insurance in 2003, and again when he renewed the insurance in 2008. In the alternative, he could have visited United Fire's website and viewed the entire current policy, including the Commercial General Liability Coverage Form. In sum, based on a plain reading of the statute, United Fire complied with Minn.Stat. § 60A.08, subd. 1.[5]

■ This interpretation does not frustrate the statute's apparent goal of ensuring that a policyholder has access to the substantive provisions of his or her insurance policy, especially when a new policy issues. *See Aaberg v. Minn. Comm. Men's Ass'n,* 143 Minn. 354, 360, 173 N.W. 708, 711 (1919) (stating that an insurance policy should contain "the substantive terms of the contract"); 1A Lee R. Russ et al., *Couch on Insurance* § 14:6 (3d ed.1997 & Supp.2010) ("[W]hile many jurisdictions require the insurer to furnish a copy of the policy to the insured, these provisions are designed for the protection of the insured by allowing the latter the opportunity to read the policy and become familiar with its terms.").

Particularly in the case of renewal, where the policyholder is presumably fa-

---

5. Because we find that section 60A.08, subdivision 1, does not require all the terms and conditions of a policy renewal to be physically included with the policy, we need not consider the district court's rulings on whether the statute nullified specific terms of forms not physically included in the renewal documents.

miliar with his or her policy, requiring an insurer to physically send the insured all coverage forms, schedules, endorsements, and amendments each year could effectively drown the insured in paper and make it *less* likely that the insured is notified of key changes to the policy. For example, the lodge's 2009 renewal documents alone amounted to *91 pages,* presumably far shorter than the complete policy.

Moreover, the goals of access and transparency are furthered in this case where complete policy documents are available "24 hours a day, seven days a week" on United Fire's website, and United Fire provided the lodge with updated paper copies of the relevant policy documents from the time it became a customer in 2003. It is reasonable to think that a small business owner would keep, and thus be able to refer back to, those important documents.

Schupp cannot now successfully claim ignorance of the terms of the Commercial General Liability Coverage Form, specifically Exclusion 2.g. *See Parsons, Rich & Co. v. Lane,* 97 Minn. 98, 116, 106 N.W. 485, 493 (1906) ("[A] person who accepts and retains the possession of an insurance policy is bound to know its contents.... Ignorance will not relieve a party from his contract obligations."). Schupp and the lodge knew, or should have known, that the policy contained Exclusion 2.g., even though they did not receive a copy of the Commercial General Liability Coverage Form in 2009. *Cf. Domke v. Farmers & Mechs. Sav. Bank,* 363 N.W.2d 898, 901 (Minn.App.1985) (holding that when an insured never received a complete copy of his policy and did not otherwise have notice of a certain provision of the policy, the insurer could not enforce that provision).

 This interpretation also comports with Minnesota law concerning insurance policy renewals. This court has stated

that "[w]hen a policy is renewed and the precise terms are not stated, new insurance like the expiring insurance is intended. Further, an insurer has a duty to renew on the same terms and conditions as the original policy." *Eisenschenk v. Millers' Mut. Ins. Ass'n of Ill.,* 353 N.W.2d 662, 664 (Minn.App.1984) (citation omitted), *review denied* (Minn. Jan. 2, 1985). Upon renewal, an insurer need only notify the insured when an amendment or endorsement to the policy "substantially reduces the prior insurance coverage." *Canadian Universal Ins. Co. v. Fire Watch, Inc.,* 258 N.W.2d 570, 575 (Minn.1977); *see also Eiynk v. Sabrowsky,* 524 N.W.2d 297, 298 (Minn.App.1994). Thus, to validly renew an insurance policy in Minnesota, an insurer need not physically attach each and every term and condition of insurance to the renewal documents.

Finally, given our construction of subdivision 1, we need not address the district court's interpretation of Minn.Stat. § 60A.08, subd. 3 (2008), which allows renewal of an insurance policy by the issuance of a certificate of insurance. We do note, however, that section 60A.08, subdivision 3, is permissive, rather than mandatory. *Id.* ("Any insurance policy ... *may* be renewed ... by a certificate ....") (emphasis added). This permissive language, along with caselaw addressing other ways to renew a policy besides issuance of a certificate, suggests that the subdivision does not prescribe the only way in which an insurer may renew an insured's policy.

## DECISION

Section 60A.08, subdivision 1, does not require an insurer to physically attach every policy document to a renewal policy. We thus conclude that United Fire properly renewed Northern Pine Lodge's policy and may enforce Exclusion 2.g. to preclude coverage for damages arising out of the

2009 automobile accident. We reverse the district court's grant of summary judgment in favor of Schupp and the lodge, and hold that United Fire is entitled to summary judgment.[6]

**Reversed.**

---

**6.** Because our decision also has the effect of vacating the district court's award of damages in the form of attorney fees, costs, and disbursements, we need not address the parties' arguments regarding the propriety of those fees and costs.