625 S.E.2d 716

**Pamela E. HOWE, individually, and as adoptive parent and next friend of Trey J. Howe, a minor, Appellant**

**v.**

**Duane A. HOWE, American Standard Insurance Company of Ohio and American Family Insurance Company, Appellees.**

**No. 32573.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 2005.

Decided Nov. 17, 2005.

Dissenting Opinion of Chief Justice Albright Nov. 29, 2005.

Concurring Opinion of Justice Davis Dec. 6, 2005.

Dissenting Opinion of Justice Starcher Dec. 16, 2005.

Paul T. Farrell, Jr., J. Michael Benninger, Wilson, Frame, Benninger & Metheney, P.L.L.C., Morgantown, for Appellant.

Robert P. Martin, Phillip C. Monroe, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, P.L.L.C., Charleston, for Appellees.

BENJAMIN, Justice:

In the instant appeal we are asked to review the Circuit Court of Marion County's July 20, 2004 Opinion Order Denying in Part Plaintiff's Motion for Summary Judgment on the Declaratory Judgment Action and Granting in Part American Standard Insurance Company of Ohio and American Family Insurance Company's Motion for Summary Judgment. In that Order, the circuit court, applying Ohio law, held that liability coverage did not exist under several policies of insurance issued in the State of Ohio to Ohio residents for injuries sustained in a motorcycle accident occurring on September 13, 2000 in Farmington, Marion County, West Virginia. Appellant primarily argues that the "intra-insured suit" exclusions contained in the policies, admittedly valid under the law of the State of Ohio, are unenforceable in this State because they violate West Virginia public policy. Appellant also argues that the circuit court erred in finding liability coverage did not exist under a homeowner's insurance policy for claims arising from an alleged negligent entrustment of a motorcycle helmet due to the policy's exclusion for claims "arising out of the ownership, supervision, entrustment, maintenance, operation, use, loading or unloading of any type of motor vehicle . . .[.]" After due consideration of the record below, the arguments raised by the parties and the relevant legal precedent, we affirm the judgment of the Circuit Court of Marion County.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Pamela E. Howe married Appellee Duane Howe on September 9, 2000, in the State of Ohio. Both were at the time, and continue to be, Ohio residents. On September 13, 2000, while traveling through Marion County, West Virginia, Mr. and Mrs. Howe were involved in a motorcycle accident which resulted in Mrs. Howe sustaining serious injuries. The accident occurred when Mr. Howe, who was operating the motorcycle on which Mrs. Howe was a passenger, allegedly struck the rear of a vehicle which was stopped at a red light. The motorcycle involved in the accident was a 1996 Harley Davidson, owned by Mr. Howe, which was garaged, licensed, registered and maintained in the State of Ohio.

At the time of the September 13, 2000 motorcycle accident, Mr. Howe possessed four insurance policies issued by American Standard Insurance Company ["ASIC"] and/or American Family Insurance Company ["AFIC"]. These policies include: (1) ASIC Motorcycle Policy No. 0749–9531–04–SCYC–OH (insuring the 1996 Harley Davidson involved in the accident); (2) AFIC Ohio Homeowners Policy No. 34–P10307–01; (3) AFIC Family Car Policy No. 0749–9531–07–03–FPPA–OH (insuring a 1995 Dodge Dakota); and (4) AFIC Personal Liability Umbrella Policy No. 34–U–00995–01.

On September 3, 2002, Appellant initiated a civil action in the Circuit Court of Marion County alleging damages arising from Mr. Howe's negligence both in operating the motorcycle at the time of the accident and in not providing her with a proper safety helmet. Her complaint also sought a declaration of the liability and underinsured motorist coverage available under the four policies of insurance listed above. After certain discovery was conducted, the parties filed cross-motions for summary judgment relating to the coverage issues.

In her November 18, 2003 Motion for Partial Summary Judgment on the Declaratory Judgment Action, Appellant argued that ASIC and AFIC improperly relied upon Intra–Insured Suit (or "household") exclusions [1] contained in each of the respective policies to deny coverage for the claims asserted against her husband. Appellant asserted in her motion that the validity of these exclusions was unsettled under Ohio law [2] and that they violate the public policy of this State and should not be enforced in any event. Appellant also argued she was entitled to uninsured motorist coverage [3] under the motorcycle policy, the family car policy and the umbrella policy. Conversely, ASIC and AFIC filed their Motion for Summary Judgment on November 20, 2003 arguing that Ohio law applied to determine the scope of coverage, if any, provided by the policies and that, under Ohio law, the policies do not provide either liability or underinsured motorist coverage for Appellant's claims arising from the September 13, 2000 motorcycle accident.

After a May 17, 2004 hearing on the respective motions, the circuit court entered an Opinion Order on July 20, 2004. Invoking West Virginia conflicts of law principles, the circuit court held that the determination as to what coverages were available under the various insurance policies was to be governed by Ohio law as the policies were issued in the State of Ohio to Ohio residents to insure risks principally located in Ohio. The circuit court noted that the only relationship West Virginia has to the parties or transaction was that the motorcycle accident occurred in West Virginia. The circuit court rejected Appellant's argument that West Virginia law should apply because the exclusions at issue violate our public policy. The circuit court distinguished our decision in *Paul v. National Life*, 177 W.Va. 427, 352 S.E.2d 550 (1986), wherein we refused to apply Indiana's guest passenger statute, by noting that *Paul* involved a foreign statute which, if applied, would operate to immunize the tortfeasor from liability. By contrast, the instant action involved the determination of coverage available under foreign insurance contracts, not immunization from liability. Thus, the circuit court determined application of Ohio law was justified as Ohio had a more significant relationship to the parties and transactions at issue and West Virginia's relationship to the parties and transactions was minimal. Moreover, the circuit court found West Virginia public policy did not forbid application of Ohio law.

Applying Ohio law, the circuit court found coverage did not exist under any of the policies at issue.[4] Central to the circuit court's

---

1. The specific exclusions at issue are set forth below and will be referred to interchangeably as "household" exclusions throughout this opinion.

2. Subsequent to the filing of her motion before the circuit court, Appellant apparently conceded that "household" exclusions are valid and enforceable under Ohio law.

3. The September 3, 2002 complaint did not include the availability of uninsured motorist coverages under the motorcycle, family car and umbrella policies within the scope of the declaratory judgment action. On January 20, 2004, a Stipulation and Agreed Order was entered to include such coverages within the scope of the declaratory judgment action.

4. Although the circuit court's order addressed several provisions under the four policies, the instant appeal is limited to the circuit court's application of Ohio law to enforce the various "household" exclusions contained within the policies and its ruling on coverage for Appellant's negligent entrustment claim under the homeowner's policy. Additionally, even though each of the four policies contain "household" exclusions, Appellant is not challenging the circuit court's finding that coverage does not exist under the family car policy. With respect to the family car policy, the circuit court found coverage did not exist based upon two exclusions, the "household" exclusion and an exclusion barring "liability coverage for bodily injury arising out of the use of any motorized vehicle with less than four wheels." Appellant does not assert error with

findings was the recognition that "household" exclusions, which were included in each of the policies at issue, are valid under Ohio law.[5] The "household" exclusion contained in the motorcycle policy issued to Mr. Howe provides:

## PART I  LIABILITY COVERAGE

**Exclusions:**

This coverage does not apply to:

. . .

9. **Bodily injury** to:
   b. **You** or any person related to you and residing in your household.
   c. Any person related to the operator and residing in the household of the operator.

Similarly, the umbrella policy contains the following provisions:

## DEFINITIONS

. . .

9. **Insured** means:
   a. The **named insured**;
   b. **Your relatives;**

. . .

18. **Relative** means a resident of **your** household who is:
   a. Related to **you** by blood, marriage or adoption, including **your** ward or foster child;

. . .

## EXCLUSIONS

This policy does not cover:

. . .

10. **Intra–Insured Suits.** We will not cover **personal injury** to the **named insured** or anyone within the meaning of part a or b of the definition of **insured.**

the circuit court's finding that coverage does not exist based upon the "less than four wheels" exclusion. Thus, the validity and enforcement of the "household" exclusion in the family car policy is moot as coverage does not exist regardless of its inclusion in the policy.

5. Although the homeowner's policy contains a "household" exclusion and its validity was raised

Finally, the following provisions contained within the homeowner's policy are relevant:

## DEFINITIONS

. . .

9. Insured
   a. **Insured** means **you** and, if residents of **your** household:
      (1) **your** relatives;

. . .

14. **You** and **your** refer to the person or people shown as the named **insured** in the Declarations. These words also refer to **your** spouse who is a resident of **your** household.

. . .

## EXCLUSIONS—SECTION II

**Coverage D—Personal Liability and Coverage E—Medical Expense** do not apply to:

. . .

11. **Intra-insured Suits.** We will not cover **bodily injury** to any **insured.**

. . .

16. **Vehicles**
   a. **We** will not cover **bodily injury** or **property damage** arising out of the ownership, supervision, entrustment, maintenance, operation, use, loading or unloading of any type of motor vehicle, motorized land conveyance or trailer[.]

In its July 20, 2004 Opinion Order, the circuit court found neither the motorcycle policy nor the umbrella policy provided coverage for Appellant's claims due to the "household" exclusions. Further, the circuit court found coverage did not exist under the homeowner's policy due to the vehicle exclusion.

in the parties' motions before the circuit court, the circuit court did not address the same in its Opinion Order. In her filings before this Court, Appellant concedes that our ruling on the applicability of Ohio law would also, necessarily, impact the enforcement of the "household" exclusion contained within the homeowner's policy.

On July 23, 2004, Appellant moved the circuit court, pursuant to Rule 54(b) of the *West Virginia Rules of Civil Procedure,* to amend the July 20, 2004 Opinion Order to include the language "that there is no just reason for delay" and permit immediate appeal of the July 20, 2004 Opinion Order.[6] The circuit court granted the motion by Order dated September 9, 2004. Appellant timely filed her Petition for Appeal with this Court, which we accepted by Order dated March 25, 2005. Upon review of the record below, the arguments of the parties and the pertinent legal authorities, we affirm the Circuit Court of Marion County, West Virginia.

## II.

### STANDARD OF REVIEW

■ In the instant matter, Appellant seeks reversal of the Circuit Court of Marion County's July 20, 2004, Opinion Order granting partial summary judgment in favor of ASIC and AFIC regarding various insurance coverage issues. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Likewise, the "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. Pt. 1, *Tennant v. Smallwood,* 211 W.Va. 703, 568 S.E.2d 10 (2002). *See also Payne v. Weston,* 195 W.Va. 502, 506–07, 466 S.E.2d 161, 165–66 (1995)("The interpretation of an insurance contract . . . is a legal determination which . . . is reviewed *de novo* on appeal." (citation omitted)). Recognizing our plenary review, we turn now to the issues presented in the instant appeal.

## III.

### DISCUSSION

The primary issue on appeal is whether the circuit court erred by applying Ohio law

to determine the scope of coverage available, if any, under the motorcycle policy, the homeowner's policy and the umbrella policy issued to Mr. Howe, an Ohio resident, to insure risks principally arising in the State of Ohio, for injuries sustained by Appellant, Mr. Howe's wife, during a motorcycle accident occurring in the State of West Virginia in September 2000. The parties agree that if Ohio law applies, coverage does not exist under the policies for Appellant's claims. Thus, we begin our discussion, as we must, with a review of our law governing the resolution of conflicts of law applicable to questions of insurance coverages.

■ This Court has repeatedly recognized that questions of policy *coverage* as opposed to *liability* are governed by conflicts of law principles applicable to contracts. *Lee v. Saliga,* 179 W.Va. 762, 766, 373 S.E.2d 345, 349 (1988); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.,* 182 W.Va. 580, 583, 390 S.E.2d 562, 565 (1990); *Nadler v. Liberty Mut. Fire Ins. Co.,* 188 W.Va. 329, 334, 424 S.E.2d 256, 261 (1992). Our general rule with respect to conflicts of law was set forth within Syllabus Point 2 of *General Electric Co. v. Keyser,* 166 W.Va. 456, 275 S.E.2d 289 (1981), wherein we held:

" 'The law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state'. Syl. pt. 1 (in part) *Michigan National Bank v. Mattingly,* W.Va., 158 W.Va. 621, 212 S.E.2d 754 (1975)."

In *Lee v. Saliga,* 179 W.Va. 762, 373 S.E.2d 345 (1988), we modified this general rule when addressing coverage available under a motor vehicle policy of insurance and adopted a modified modern "more significant

---

**6.** Appellant also filed a Rule 59(e) motion to alter or amend the Opinion Order with respect to the circuit court's finding regarding rejection of uninsured and underinsured motorist coverage under the umbrella policy. That motion was granted and the circuit court's finding with respect to rejection of such coverage was stricken as premature from the July 20, 2004 Opinion Order by Order dated September 9, 2004. Thereafter, by letter dated October 12, 2004,

Appellant's counsel informed the circuit court of Supreme Court of Ohio's September 29, 2004 decision in *Kyle v. Buckeye Union Ins. Co.,* 103 Ohio St.3d 170, 814 N.E.2d 1195 (2004), which, according to counsel, "disposes of [Appellant's] claim for uninsured motorist benefits under Ohio law." Appellant also informed the circuit court that the only remaining issue pending before the circuit court was Mr. Howe's liability for his wife's injuries.

relationship" test, which combines the principles set forth in Sections 6 and 193 of the Restatement (Second) of Conflict of Laws with our prior case law. The "more significant relationship" test adopted in *Lee* provides that "[t]he provisions of a motor vehicle policy will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties." Syl. Pt. 2, *Lee*.

■ Though not presented with a public policy argument in *Lee*, we acknowledged a conflicts of law principle which permits a state to ignore the law of another state where that law is contrary to the state's own public policy. *Lee*, 179 W.Va. at 770, 373 S.E.2d at 353, n. 19. Four years later, in *Nadler v. Liberty Mutual Fire Insurance Company*, 188 W.Va. 329, 424 S.E.2d 256 (1992), we squarely addressed the effect an argument that application of a foreign jurisdiction's law violates our public policy has on a conflicts of law analysis. In *Nadler*, we held:

> Where a choice of law question arises with regard to the interpretation of coverage provisions in a motor vehicle insurance policy executed in another state, the public policy considerations inherent in the fact that the substantive law of the other state differs from our own will ordinarily be adequately addressed by application of the significant relationship conflict of laws test enunciated in Syllabus Point 2 of *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988).

Syl. Pt. 4, *Nadler v. Liberty Mut. Fire Ins. Co.*, 188 W.Va. 329, 424 S.E.2d 256 (1992).

Both *Lee* and *Nadler* involved the interpretation of motor vehicle insurance policies entered into in foreign jurisdictions. In those cases, we considered the importance of promoting the parties' reasonable expectations when entering into an insurance contract in formulating our rules governing the interpretation of coverage under foreign motor vehicle insurance policies. *Lee*, 179 W.Va. at 768–69, 373 S.E.2d at 351–2; *Nadler*, 188 W.Va. at 337, 424 S.E.2d at 264. In *Lee*, we looked to such factors as the residen-

cy of the parties, the principle location of the risk insured and where the policy was issued to determine the parties' reasonable expectations and noted:

> The usual coincidence of the insurance agent, insured, and the risk in the same state dictates that the parties would be more familiar with that state's insurance statutes, which often supplement or control the policy provisions. This law should control the reasonable expectation[s] of the parties, rather than that of another state whose only connection to the dispute is the fortuity that the accident occurred there.

*Lee*, 179 W.Va. at 769, 373 S.E.2d at 352. Implicit in our analysis was the recognition that a motor vehicle may engage in interstate travel and that the coverage provided under the policy insuring the motor vehicle should not vary according to the state where the vehicle may happen to be located at the time of an accident. We did, however, provide an exception to the general rule of applying the law of the state where the policy was issued and the risk insured was principally located where another state has a more significant relationship to the transaction and the parties.

In the instant matter, we are not presented with a motor vehicle insurance policy, but with a motorcycle insurance policy, a homeowner's insurance policy and an umbrella policy. A motorcycle insurance policy is very similar to a motor vehicle policy such as those at issue in *Lee* and *Nadler*. Both insure a motorized method of transportation, one with two wheels, the other with four. Therefore, we believe the reasoning supporting the conflicts of law principles announced in *Lee* and *Nadler* governing motor vehicle insurance policies is equally applicable to motorcycle insurance policies.

■ As noted, in formulating the conflicts of law analysis applicable to motor vehicle policies, we have focused primarily upon the reasonable expectations of the parties when entering the contract for insurance. We believe the reasoning underlying the adoption of our conflicts of law analysis in *Lee* is stronger when considering the reasonable expectations of the parties in entering a contract for homeowner's insurance. Unlike a

motor vehicle or motorcycle policy, which principally insure movable methods of transportation, a homeowner's insurance policy principally insures an immovable object, a home, and liability arising from the ownership thereof. Likewise, the purpose of a personal liability umbrella policy is to insure against liabilities incurred which exceed the limits of coverage available under motor vehicle and homeowner's insurance policies. If the parties can reasonably expect that the law of the state where a motor vehicle or homeowner's insurance policy is issued would govern the interpretation of available coverages under the policies, it is equally reasonable for the parties to expect the same law to govern the interpretation of coverage afforded under a personal liability umbrella insurance policy, a policy which ordinarily affords coverage which is excess to that afforded under the motor vehicle and homeowner's policies. Thus, we see no reason to distinguish between the conflicts of law principles applicable to interpretations of coverages available under motor vehicle policies of insurance, motorcycle policies of insurance, homeowner's policies of insurance and personal liability umbrella policies of insurance in light of the parties' reasonable expectations. Accordingly, we now hold that the conflicts of law principles announced in Syllabus Point 2 of *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988) and Syllabus Point 4 of *Nadler v. Liberty Mut. Fire Ins. Co.*, 188 W.Va. 329, 424 S.E.2d 256 (1992), applicable to the interpretation of coverage under a motor vehicle insurance policy are also applicable to the interpretation of coverage under a motorcycle insurance policy, a homeowner's insurance policy and/or a personal liability umbrella insurance policy.[7]

■ Thus, the circuit court correctly invoked the principles announced in *Lee* and *Nadler* to determine that Ohio has a more significant relationship to the parties and transactions at issue. Both Appellant and her husband were (and continue to be) Ohio residents, the policies of insurance at issue were all issued in the State of Ohio to insure risks principally located in the State of Ohio and there is no question relating to a West Virginia resident's liability or ability to collect a judgment. The only relationship West Virginia has to the parties or transactions at issue is the "mere fortuity" that the accident at issue occurred within our borders.[8] Clearly, as admitted by Appellant, Ohio has a

---

7. We also note the similarity of this holding to that in *Liberty Mutual Insurance Company v. Triangle Industries, Inc.*, 182 W.Va. 580, 390 S.E.2d 562 (1990), which involved the law applicable to interpretation of coverage under an insurance contract made in one state to be performed in another and adopted a test similar to that announced in *Lee* and *Nadler*. In the Syllabus of *Liberty Mutual*, we held:

> In a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

8. The underlying facts of this case are strikingly similar to those presented in *Nadler* where we upheld the application of Ohio law in determining the scope of underinsured motorists coverage available under a motor vehicle policy of insurance. In *Nadler*, we noted:

> It is apparently undisputed that Ohio has the more significant relationship with the parties and the transaction at issue in this case. The plaintiffs and their decedents were residents of Ohio at the time of the accident. The insurance policy in question was issued in Ohio, and it appears that the vehicles covered thereby were registered and garaged in Ohio. In the absence of evidence to the contrary, we can assume that Ohio was "the principal location of the insured risk during the term of the policy." Rest. (Second) Conflict of Laws § 193.
>
> By comparison, the parties' contacts with West Virginia were minor. The accident occurred here, and the owner and driver of the truck were West Virginia residents. These occurrences, however, have no bearing on the extent of the coverage afforded the plaintiffs under the terms of their insurance contract issued in Ohio. Upon these facts, we conclude that the parties reasonably expected the law of Ohio to control the interpretation of the insurance contract rather than the law of West Virginia, "whose only connection to the dispute is the fortuity that the accident occurred there." *Lee v. Saliga*, 179 W.Va. at 769, 373 S.E.2d at 352. *See Johnson v. Neal*, 187 W.Va. 239, 418 S.E.2d 349 (1992); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc., supra.*

*Nadler*, 188 W.Va. at 335, 424 S.E.2d at 262. However, in the instant matter, unlike *Nadler*, no West Virginia residents were involved in the underlying accident.

more significant relationship to the coverage issues presented. Having recognized the significance of Ohio's interest in the resolution of the coverage issues under Ohio law, we must address Appellant's argument that Ohio law violates our public policy.

■ Appellant admits the " 'household' exclusion is valid and enforceable under Ohio law." Appellant urges this Court to reject application of Ohio law as contrary to our public policy. In order to prevail on this argument, Appellant must demonstrate more than a mere difference in substantive law. As we held in *Nadler:*

> The mere fact that the substantive law of another jurisdiction differs from or is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law under recognized conflict of laws principles is contrary to the public policy of the forum state.

Syl. Pt. 3, *Nadler.*

Appellant cannot point to any decision of this Court that declares "household" exclusions are a violation of West Virginia public policy. Indeed, none exist. Nor does she address or acknowledge prior decisions of this Court *upholding* similar family use exclusions as valid and not against the public policy of this State in the context of underinsured motorist coverage. *See* Syl. Pt. 2, *Thomas v. Nationwide Mut. Ins. Co.,* 188 W.Va. 640, 425 S.E.2d 595 (1992); Syl. Pt. 4, *Cantrell v. Cantrell,* 213 W.Va. 372, 582 S.E.2d 819 (2003)(per curiam). Instead, Appellant primarily relies upon our decision in *Paul v. National Life,* 177 W.Va. 427, 352 S.E.2d 550 (1986), for the proposition that West Virginia has a strong public policy in favor of compensating persons injured by the negligence of others. While Appellant is correct that *Paul* does recognize such a public policy, she takes the holding of *Paul* too far and fails to acknowledge the distinction between *precluding liability* and *excluding coverage.*

In *Paul,* we held that foreign automobile guest passenger statutes, which operate to immunize a tortfeasor from liability, violate the public policy of this State and will not be applied in our courts. Syl. Pt. 2, *Paul. Paul* involved *West Virginia residents* who were killed in a single vehicle automobile accident in Indiana. The estate of the passenger brought a wrongful death action against the driver's estate in West Virginia. The estate raised Indiana's guest passenger statute, which immunized a driver from liability for the injury death of a passenger in the vehicle. This Court, relying on our abolition of tort immunities in various circumstances, refused to apply the statute based on our strong public policy against providing tort immunity. *Paul,* 177 W.Va. at 433–34, 352 S.E.2d at 556. Specifically, we stated "It is the strong public policy of this State that persons injured by the negligence of another should be able to recover in tort." *Id.* at 433, 352 S.E.2d at 556. *Paul* simply did not involve the issue of insurance coverage to facilitate such recovery. In the instant matter, application of Ohio law does not immunize Mr. Howe from liability. Instead, application of Ohio law merely precludes coverage for Mr. Howe's liability under the various policies of insurance. The ability to collect insurance proceeds does not diminish his liability.

We likewise reject Appellant's argument that Informational Letter No. 140 promulgated by the West Virginia Insurance Commissioner in 2002 evidences a strong public policy against "household" exclusions in policies of insurance. In Informational Letter No. 140, the Insurance Commissioner declared "household" exclusions in automobile liability insurance policies void up to the mandatory policy limits set forth in W. Va.Code § 33–6–31. The letter went on to recognize the potential validity of the exclusions in some circumstances not involving mandatory liability limits. Thus, we do not see how this letter evidences the strong public policy suggested by Appellant.

■ This Court does not take a request to invoke our public policy to avoid application of otherwise valid foreign law lightly. As we stated in *Nadler:*

> We adhere to the general principle that a court should not refuse to apply foreign law, in otherwise proper circumstances, on public policy grounds unless the foreign law is contrary to pure morals or abstract

justice, or unless enforcement would be of evil example and harmful to its own people. *Id.* at 338, 424 S.E.2d at 265 (internal citations and quotations omitted). Appellant has not demonstrated the strong public policy necessary to avoid application of Ohio law in this matter. Therefore, we affirm the decision of the Circuit Court of Marion County to apply Ohio law in determining the scope of coverages available under the various policies of insurance.

▪ We summarily dispose of Appellant's second assignment of error. Appellant argues the circuit court erred in denying coverage under the homeowner's policy based upon the motor vehicle exclusion. However, Appellant acknowledges that the homeowner's policy also included a "household" exclusion not addressed by the circuit court. Because we find the circuit court correctly applied Ohio law to enforce the "household" exclusions in the motorcycle and umbrella policies, we likewise conclude that the "household" exclusion contained within the homeowner's policy would preclude coverage for Appellant's claims.[9] Thus, we need not address the propriety of the circuit court's ruling on the motor vehicle exclusion's application to Appellant's negligent entrustment claims as coverage does not exist under the homeowner's policy due to the "household" exclusion.

## IV.

### CONCLUSION

Upon plenary review of the issues presented, we find the Circuit Court of Marion County did not err in its application of Ohio law and its finding that the various policies of insurance at issue do not afford coverage for Appellant's claims against her husband. Accordingly, we affirm the Circuit Court of Marion County's July 20, 2004 Opinion Order

Denying in Part Plaintiff's Motion for Summary Judgment on the Declaratory Judgment Action and Granting in Part American Standard Insurance Company of Ohio and American Family Insurance Company's Motion for Summary Judgment.

### AFFIRMED

Chief Justice ALBRIGHT and Justice STARCHER dissent and file a dissenting opinions.

Justice DAVIS concurs and files a concurring opinion.

ALBRIGHT, Chief Justice, dissenting:

(Filed Nov. 29, 2005)

The majority is correct; this Court has never explicitly stated that household exclusions in automobile liability policies are contrary to the public policy of the State of West Virginia. However, in examining immunities and exclusions of a similar nature, this Court has unequivocally expressed its commitment to the fulfillment of legislative intent to provide coverage for liability in automobile accidents, subject to certain statutory limits.

With regard to family immunity, including parent-child and interspousal immunity, this Court has gradually modified its posture, ultimately eliminating those immunities. In its 1968 decision in *Freeland v. Freeland,* 152 W.Va. 332, 162 S.E.2d 922 (1968), *overruled by Lee v. Comer,* 159 W.Va. 585, 224 S.E.2d 721 (1976), this Court reduced the scope of family immunity, limiting it to parent-child and husband-wife relationships. In 1976, the Court readdressed such principles in *Lee* and abrogated the doctrine of parental immunity to the extent that an unemancipated minor child would be permitted to sue his parent for injuries received in a motor vehicle accident.[1] In *Lee,* this Court specifically dis-

---

9. We have long held that we "may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965). Thus, the failure of the circuit court to address the "household" exclusion in the homeowner's policy does not preclude us

from finding the policy's "household" exclusion precludes coverage under Ohio law for Appellant's injuries as the issue was raised and briefed by the parties below.

1. The *Lee* Court recognized that "[i]n recent years the application of this doctrine has begun to recede as rapidly as it had once spread." 159 W.Va. at 588, 224 S.E.2d at 722.

cussed automobile liability insurance and explained as follows:

> The rights of such minor child must be considered in light of today's contemporary conditions and modern concepts of fairness. In the realm of automobile accident cases we cannot brush aside or ignore the almost universal existence of liability insurance. Where liability insurance exists the domestic tranquillity argument is no longer valid, for, in fact, the real defendant is not the parent, but the insurance carrier.

159 W.Va. at 590, 224 S.E.2d at 723. Syllabus point two of *Lee* states: "An unemancipated minor may maintain an action against his parent for personal injuries sustained in a motor vehicle accident caused by the negligence of said parent and to that extent the parental immunity doctrine is abrogated in this jurisdiction."

By 1978, this Court had determined that the defense of interspousal immunity was no longer available in suits between spouses. *Coffindaffer v. Coffindaffer*, 161 W.Va. 557, 567–68, 244 S.E.2d 338, 344 (1978). In *Sitzes v. Anchor Motor Freight, Inc.*, 169 W.Va. 698, 289 S.E.2d 679 (1982), this Court reviewed the changes which had been instituted and observed "that the trend in this State was decidedly in favor of the abolishment of common law immunities." 169 W.Va. at 702, 289 S.E.2d at 682.

In *Paul v. National Life*, 177 W.Va. 427, 352 S.E.2d 550 (1986), this Court accentuated that "comity does not require the application of the substantive law of a foreign state when that law contravenes the public policy of this State." 177 W.Va. at 433, 352 S.E.2d at 556 (citing *Dallas v. Whitney*, 118 W.Va. [106], 188 S.E. 766 (1936)). The *Paul* Court recognized the "strong public policy of this State that persons injured by the negligence of another should be able to recover in tort." *Id.* The Court also declared "that automobile guest passenger statutes violate the strong public policy of this State in favor of compensating persons injured by the negligence of others." *Id.* at 434, 352 S.E.2d at 556. Based upon that recognition of public policy, the *Paul* Court specifically stated that "we will no longer enforce the automobile guest passenger statutes of foreign jurisdictions in our courts." *Id.*

Subsequent to the *Paul* decision, this Court addressed the existence of a named insured exclusion clause in *Dairyland Insurance Company v. East*, 188 W.Va. 581, 425 S.E.2d 257 (1992), and held as follows at syllabus point two:

> A named insured exclusion endorsement is invalid with respect to the minimum coverage amounts required by the West Virginia Motor Vehicle Safety Responsibility Law, West Virginia Code §§ 17D–1–1 to 17D–6–7 (1991 & Supp.1992). Above the minimum amounts of coverage required by West Virginia Code § 17D–4–12 (1992), however, the endorsement remains valid.

In arriving at that conclusion, this Court endorsed the reasoning of a federal district court in Kansas to the effect that a named insured clause and a household exclusion clause are invalid for the same reason: they both thwart the purpose of legislative enactments ensuring coverage for automobile accident liability up to certain statutory limitations. *See State Farm Mutual Automobile Insurance Co. v. Gengelbach*, No. 91–2048–O, 1992 WL 88025 (D.Kan. March 3, 1992). The *Gengelbach* court relied upon the following logic from *Halpin v. American Family Mutual Insurance Co.*, 823 S.W.2d 479 (Mo. 1992):

> The plain purpose of the 1986 amendment [the enactment of the Missouri Motor Vehicle Financial Responsibility Law] is to make sure that people who are injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators. This protection extends to occupants of the insured vehicle as well as to operators and occupants of other vehicles and pedestrians. *The purpose would be incompletely fulfilled if the household exclusion clause were fully enforced.* . . . We believe that the legislature had a purpose of requiring motor vehicle liability policies to provide coverage coextensive with liability, subject to the statutory limits. We should give effect to the pervasive

purpose even though the method of expression may be inartistic.

823 S.W.2d at 482 (emphasis supplied).

Thus, this State has consistently emphasized a strong public policy of ensuring protection of the innocent victims of automobile accidents.[2] As was explained by the Washington court in *Mutual of Enumclaw Insurance Co. v. Wiscomb*, 97 Wash.2d 203, 643 P.2d 441 (1982), exclusions such as the household exclusion should be void because they "exclude[ ] from protection an entire class of innocent victims for no good reason." 643 P.2d at 444.

> The family or household exclusion clause strikes at the heart of this public policy. This clause prevents a specific class of innocent victims, those persons related to and living with the negligent driver, from receiving financial protection under an insurance policy containing such a clause. . . .
>
> This exclusion becomes particularly disturbing when viewed in light of the fact that this class of victims is the one most frequently exposed to the potential negligence of the named insured. Typical family relations require family members to ride together on the way to work, church, school, social functions, or family outings. Consequently, there is no practical method by which the class of persons excluded from protection by this provision may conform their activities so as to avoid exposure to the risk of riding with someone who, as to them, is uninsured.

*Id.*; *see also Lewis v. West Am. Ins. Co.*, 927 S.W.2d 829, 835 (Ky.1996), (holding that household exclusion clauses in policies of automobile liability insurance are contrary to public policy).

Based upon this Court's specific statements disapproving of application of any principle which serves to thwart the public policy and legislative intent to ensure protection of victims of automobile accidents, I do not believe that the household exclusion in the Ohio policy should be enforced in the courts of this State.

DAVIS, J., concurring:

(Filed Dec. 6, 2005)

In this case the majority opinion found that the circuit court correctly determined that Ohio law applied to this case and that there was no liability coverage for the claims asserted. I agree completely with these conclusions. I write separately to express my view that when litigation occurring in West Virginia involves a household exclusion contained in an automobile liability policy that is issued in another state and is valid under the laws of that state, the exclusion should not be automatically rejected on public policy grounds.

As Justice Albright's dissent correctly observes, this Court has limited the applicability of household exclusions with respect to a named insured by holding that such an exclusion is invalid up to the minimum coverage amounts required under West Virginia law. *See* Syl. pt. 2, *Dairyland Ins. Co. v. East*, 188 W.Va. 581, 425 S.E.2d 257 (1992) ("A named insured exclusion endorsement is invalid with respect to the minimum coverage amounts required by the West Virginia Motor Vehicle Safety Responsibility Law, West Virginia Code §§ 17D–1–1 to 17D–6–7 (1991 & Supp. 1992). Above the minimum amounts of coverage required by West Virginia Code § 17D–4–12 (1992), however, the endorsement remains valid.").[1] It must not be over-

---

**2.** The majority references syllabus point two of *Thomas v. Nationwide Mutual Insurance Co.*, 188 W.Va. 640, 425 S.E.2d 595 (1992) and another opinion quoting that syllabus point. In that instance, however, this Court was addressing the family use exclusion within the context of underinsured coverage. Because the family use exclusion properly had "the purpose of preventing underinsured coverage from being converted into additional liability coverage," the Court upheld the exclusion. 188 W.Va. at 645, 425 S.E.2d at 600. "[W]hen the exclusion is applied, it is the liability coverage that has been paid for

by the insured, and not underinsured coverage. Therefore, such an exclusion would not violate the public policy of full compensation of an insured." *Id.*

**1.** The named insured exclusion endorsement in *Dairyland* stated:

NAMED INSURED EXCLUSION ENDORSEMENT [—] This endorsement modifies *your* policy in the following way: LIABILITY INSURANCE [—] The liability insurance provided by this policy doesn't apply to injuries to the

looked, however, that, unlike the case at bar, *Dairyland* did not involve residents of *another state* who contracted for their policy of insurance under the laws of that *other state*. Rather, the insured in *Dairyland*, was a resident of West Virginia, the parties contracted for the insurance policy in West Virginia, and, therefore, they were on notice that the policy would be subject to the laws of this State. For this reason, I find that *Dairyland* is not persuasive authority in deciding the case presently before the Court.

Notably, during the same term that this Court handed down the *Dairyland* decision, it also handed down its decision in *Nadler v. Liberty Mutual Fire Insurance Company*, 188 W.Va. 329, 424 S.E.2d 256 (1992). *Nadler* involved a two vehicle accident that occurred in West Virginia. A tractor trailer crossed the center line and collided with a vehicle that was owned an occupied by a family who were residents of Ohio. *Nadler*, 188 W.Va. at 331–32, 424 S.E.2d at 258–59. Both parties were insured by Liberty Mutual Fire Insurance Company, but the tractor trailer was insured by a policy that was issued in West Virginia, while the policy covering the Ohio vehicle was issued in Ohio. *Id.* 188 W.Va. at 332, 424 S.E.2d at 259. Subsequently, a declaratory judgment action was filed in the United States District Court for the Southern District of West Virginia raising questions involving only the Ohio policy.[2] *Id.* The District Court ultimately certified a question to this Court asking which state's law should be applied. *Id.* It was undisputed that the Ohio family would not be able to recover under their policy if Ohio law was applied.[3] *Id.* at 332–33, 424 S.E.2d at 259–60. However, the set-off provision in the

policy, which would prevent the Ohio family from recovering under their policy if Ohio law applied, was not enforceable in West Virginia as such provisions had been found to be against public policy. *Id.* at 333, 424 S.E.2d at 260. In it's discussion of the issues presented by the certified question, the *Nadler* Court surveyed how other jurisdictions handled choice of law questions where a court was being asked to enforce a provision of an insurance policy that violated the forum state's public policy, when the policy of insurance had been issued in another state to residents of the other state, and was enforceable under the law of the other state. *Id.* at 336–37, 424 S.E.2d at 263–64. The *Nadler* Court then explained that

> [o]ur substantive law governing uninsured and underinsured motorist coverages in motor vehicle insurance policies is intended to apply only to insurance transactions which occur in West Virginia or which affect the rights and responsibilities of West Virginia citizens. For this reason, the public policy of full compensation underlying our uninsured/underinsured motorist law is implicated only when the parties and the transaction have a substantial relationship with this state. The importance of the public policy is directly proportional to the significance of that relationship. The more marginal the contact West Virginia has with the parties and the insurance contract, the less reason there is to consider the public policy behind our uninsured/underinsured motorist law as a factor bearing on the choice of law determination.

When the issue is viewed in this light, it is clear that the public policy concerns

---

person named on the declarations page. It doesn't apply to the husband or wife of that person if they are living in the same household. *Dairyland Ins. Co. v. East*, 188 W.Va. 581, 583, 425 S.E.2d 257, 259 (1992) (footnote omitted).

2. The full liability limit of the West Virginia policy, $325,000, had been paid to the Ohio family. *Nadler v. Liberty Mut. Fire Ins. Co.*, 188 W.Va. 329, 332, 424 S.E.2d 256, 259 (1992). The Ohio policy provided underinsured motorist coverage in the amount of $300,000, but contained a provision that "expressly denied coverage when the amount of liability insurance available from another source was equal to or greater than the amount of underinsured motorist coverage avail-

able under the policy and provided for a set-off for any liability insurance received by the insured." *Id.* (footnote omitted). When the Ohio family tried to recover underinsured motorist benefits under their own policy, coverage was denied. *Id.* The denial of coverage prompted the declaratory judgment action in the United States District Court. *Id.*

3. Under Ohio law, the set-off provision of the insurance policy that prevented the Ohio family from receiving underinsured motorist benefits was valid. For a discussion of the set-off provision, see *supra* note 2.

raised by the plaintiffs are adequately addressed by application of the significant relationship test approved by this Court in *Lee v. Saliga*. This approach provides an answer to questions which inevitably arise any time there is a conflict between the laws of one state and the laws of another. It is also consistent with promoting the reasonable expectations of the parties to the insurance contract, an important premise for our adoption of the conflicts rule stated in *Lee v. Saliga*. The reasonable expectations of the parties with respect to the terms of an insurance contract should not be lightly disregarded. *See National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). Finally, we believe that this approach is not inconsistent with the results reached by the majority of courts that have addressed the issue. *See, e.g., Andrews v. Continental Ins. Co., supra; Draper v. Draper*, 115 Idaho 973, 772 P.2d 180 (1989); *Boardman v. United Servs. Auto. Ass'n, supra* [470 So.2d 1024]; *Sotirakis v. United Serv. Auto. Ass'n*, 106 Nev. 123, 787 P.2d 788 (1990); *State Farm Mut. Auto. Ins. Co. v. Simmons' Estate, supra*[, 84 N.J. 28, 417 A.2d 488]; *Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 41 Wash.App. 26, 701 P.2d 806, *review denied*, 104 Wash.2d 1016 (1985).

*Nadler*, 188 W.Va. at 337, 424 S.E.2d at 264. The significant relationship test of *Lee v. Saliga*, to which the *Nadler* Court referred, holds that:

> [t]he provisions of a motor vehicle policy will ordinarily be construed according to the laws of the state where the policy was issued and the risk insured was principally located, unless another state has a more significant relationship to the transaction and the parties.

Syl. pt. 2, *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988). Finally, the *Nadler* Court held, at Syllabus point 4, that

> [w]here a choice of law question arises with regard to the interpretation of coverage provisions in a motor vehicle insurance policy executed in another state, the public policy considerations inherent in the fact that the substantive law of the other state

differs from our own will ordinarily be adequately addressed by application of the significant relationship conflict of laws test enunciated in Syllabus Point 2 of *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988).

188 W.Va. 329, 424 S.E.2d 256. Applying this holding, the *Nadler* Court concluded that Ohio law governed the interpretation of the contract at issue.

*Nadler* is the controlling case for resolving the instant appeal. In the present case, the insureds are residents of Ohio, and the insurance policy was contracted under the laws of Ohio with no expectation that West Virginia law would be applied to the contract. West Virginia has no significant relationship to the transaction or the parties. Therefore, the majority opinion was correct in concluding that West Virginia public policy should not be applied to void the household exclusion contained in the Howe's insurance policy. Thus, for the reasons herein explained, I respectfully concur with the majority opinion.

STARCHER, J., dissenting.

(Filed Dec. 16, 2005)

I echo the dissenting opinion of my colleague, Chief Justice Albright. I was struck when I read the majority opinion's statement that "[a]ppellant cannot point to any decision of this Court that declares 'household' exclusions are a violation of West Virginia public policy," *supra*, 218 W.Va. at 646, 625 S.E.2d at 724. Like Chief Justice Albright, I too nodded my head in agreement with the majority's statement and said, "Yes, and this opinion blows a great opportunity to do just that!"

But after doing a little extra research, I discovered just how wrong the majority opinion is in its conclusion that there is no expression of West Virginia public policy disfavoring "household" or "family member" exclusions.

First, this Court suggested that "household" or "family member" exclusions violated West Virginia policy as early as 1978. In *Coffindaffer v. Coffindaffer*, 161 W.Va. 557, 244 S.E.2d 338 (1978), we abolished immunity between spouses, and said:

[T]he door is now open to permit husbands or wives, who in a moment of inadvertence or negligence by their spouse have been substantially injured, *to recover from applicable insurance* a fair and reasonable amount for the hospital and other medical expenses and for pain and suffering.

161 W.Va. at 567, 244 S.E.2d at 343 (emphasis added). The majority's opinion overlooked this statement, and now essentially holds that husbands and wives can sue one another for negligence, but *cannot recover from applicable insurance a fair and reasonable amount.*

Second, even if the Court has never made an explicit expression of public policy, without a doubt the Insurance Commissioner has declared that "household" or "family member" exclusions are a violation of West Virginia public policy. Insurance regulations promulgated by the Commissioner specifically state what can and cannot be in a standard motor vehicle insurance policy. Plain as day, those regulations state:

Motor vehicle liability policies shall not contain family member exclusions.

144 C.S.R. § 63.3.5 [2003]. The majority opinion sidestepped this clear regulatory statement of West Virginia public policy on this exact issue.

Additionally, the majority opinion wrongly mixes apples and oranges in its reasoning upholding the "family member" exclusion. The majority opinion chides the appellant for failing to "address or acknowledge prior decisions of this Court *upholding* similar family use exclusions as valid and not against the public policy of this State in the context of underinsured motorist coverage." 218 W.Va. at 646, 625 S.E.2d at 724. The problem is that the "family use" exclusion is different from the "family member" exclusion. The majority opinion misapprehends West Virginia law and mistakenly merges two completely different insurance concepts.

The instant case involves a "family member" exclusion in a liability policy. A "family

member" exclusion prohibits a family member from filing a liability claim against another family member. The cases relied upon by the majority opinion, *Thomas v. Nationwide Mutual Ins. Co.,* 188 W.Va. 640, 425 S.E.2d 595 (1992) and *Cantrell v. Cantrell,* 213 W.Va. 372, 582 S.E.2d 819 (2003) (*per curiam*), center upon a "family use" exclusion in an underinsured motorist policy. The "family use" exclusion prohibits a family member who files a liability claim against another family member from also recovering underinsured motorist benefits under the same policy once the liability limits are exhausted. Essentially, the "family use" exclusion prevents a policyholder from receiving a double recovery under one policy.

Both *Thomas* and *Cantrell* involved a single-car accident in which the passenger was the wife of the negligent driver. In both cases, this Court permitted the injured passenger/wife to receive payments under the family's liability coverage for the negligence of the driver/husband. What was prohibited in both cases was recovery by Mrs. Thomas and Mrs. Cantrell against their underinsured motorist coverage once the liability policy limits were exhausted.

In the instant case, appellant Howe is not attempting a double recovery. She is attempting a single recovery against her husband's liability insurance coverage. If *Thomas* and *Cantrell* are controlling, then Mrs. Howe should prevail and be permitted to recover against her husband's liability insurance policies—not the other way around.

Even though Mr. Howe purchased his liability insurance policies in Ohio, I believe that the Court should have refused to enforce the "family member" exclusion in those policies because the exclusion is offensive to West Virginia's public policy. The exclusion serves no legitimate purpose. It is "offensive," [1] "perverse," [2] "deleterious to our community interests" and "socially destructive," [3] is an "anachronism" that violates "fundamen-

1. *GEICO v. Welch,* 135 N.M. 452, 457, 90 P.3d 471, 477 (2004).

2. *Safeco Ins. Co. v. Auto. Club Ins. Co.,* 108 Wash.App. 468, 477, 31 P.3d 52, 56 (2001).

3. *Lewis v. West American Ins. Co.,* 927 S.W.2d 829, 834 (Ky.1996).

tal principles of justice," [4] and "excludes from protection an entire class of innocent victims for no good reason." [5]

The Howes were married in Ohio on September 9, 2000, and Mrs. Howe was injured by Mr. Howe's negligence on September 13th, on the first day of their honeymoon. If Mrs. Howe had been injured five days earlier, before the wedding bells rang, she would have been entitled to coverage. If the Howes had foregone marriage and "shacked-up," Mrs. Howe would have been protected by her husband's liability coverage. I cannot see any valid reason why Ohio would permit its citizens to be punished by insurance companies for entering into a state of marriage—unless Ohio's goal is to discourage marriage. Such insurance policy language is clearly contrary to West Virginia's laws and public policy, and wholly unenforceable when included in a policy issued under the laws of this State. I therefore cannot understand why the majority opinion refused to protect Mrs. Howe, an individual injured on the roads of West Virginia, and refused to afford her the protection of our laws.

I respectfully dissent.

---

**4.** *State Farm Mut. Auto. Ins. Co. v. Ballard,* 132 N.M. 696, 699–700, 54 P.3d 537, 540–41 (2002).

**5.** *Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wash.2d 203, 207, 643 P.2d 441, 443 (1982).