**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1163

M&S PARTNERS, a New York Partnership,

Plaintiff - Appellant,

v.

SCOTTSDALE INSURANCE COMPANY, an Ohio corporation,

Defendant - Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (2:04-cv-01221)

Argued: January 30, 2008                    Decided: May 9, 2008

Before WILKINSON and GREGORY, Circuit Judges, and Patrick Michael DUFFY, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge Duffy joined.

**ARGUED:** Kristin A. Boggs, GOODWIN & GOODWIN, LLP, Charleston, West Virginia, for Appellant. James Daniel McQueen, Jr., FROST, BROWN & TODD, LLC, Charleston, West Virginia, for Appellee. **ON BRIEF:** Raymond S. Franks, II, GOODWIN & GOODWIN, LLP, Charleston, West Virginia, for Appellant. Amanda J. Davis, FROST, BROWN & TODD, LLC, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

The Appellant, M&S Partners ("M&S"), a New York partnership, filed suit in West Virginia state court against the Appellee, Arizona-based Scottsdale Insurance Company ("Scottsdale"), an Ohio corporation, to recover a default judgment ("insurance coverage claim") it had previously obtained against an insured of Scottsdale, Sandcastle Corporation d/b/a Southern Security Systems ("Sandcastle"), a Virginia corporation. M&S also filed a third party claim against Scottsdale for bad faith insurance settlement practices, in violation of the West Virginia Unfair Trade Practices Act ("UTPA"), W. VA. Code § 33-11-4(9). Scottsdale removed this case to federal court. After reviewing the parties' submissions, the district court granted Scottsdale's motion for application of Virginia law and its motion for partial summary judgment as to the UTPA claim. Shortly thereafter, the district court granted Scottsdale's motion for summary judgment as to the remaining insurance coverage claim. M&S appeals the district court's decisions to us. For the reasons below, we affirm the district court's determinations.

I.

On October 19, 2000, M&S filed a civil suit ("the underlying action") against Sandcastle and P.K. Spencer ("Spencer"), a principal with Sandstone, alleging fraud and breach of the parties'

2

Residential Monitoring Receivable Financing Agreements.[1]  On July 17, 2001, M&S amended its complaint to assert two additional causes of action - negligent misrepresentation and negligent supervision - against Spencer and two additional Sandcastle principals.[2]

On June 6, 2002, M&S moved for a default judgment against Sandcastle.  Because no representative for Sandcastle appeared on the day of the trial, the district court conducted a hearing on M&S's default motion.  The default hearing focused solely on M&S's breach of contract claim and the resultant damages.  On October 3, 2003, the district court granted M&S's motion for default judgment and awarded damages in the amount of $508,054.93.

On October 1, 2004, M&S filed a civil action in West Virginia state court against Sandcastle's insurer, Scottsdale, to recover the default judgment award.[3]  In addition, M&S alleged that Scottsdale's actions violated West Virginia's UTPA.  After Scottsdale removed the claims to federal district court, the parties contested whether West Virginia law or Virginia law should

---

[1]According to the Amended Complaint, these agreements "provide financing secured by contracts owned, acquired, or originated by [Sandcastle] for alarm monitoring services provided or arranged by [Sandcastle]."  (J.A. 26 at ¶10.)

[2]All of the defendants, with the exception of Sandstone, were voluntarily dismissed or not properly served.

[3]Sandcastle and Spencer tendered the underlying action to Scottsdale.  Scottsdale refused to accept the tender because the claims involved actions that were "deliberate or willful in nature" and thus not covered under the parties' Commercial General Liability (CGL) policy. (J.A. 328-29.)

apply to the claims. The district court, in a memorandum opinion and order, granted Scottsdale's motion for application of Virginia law and its motion for partial summary judgment, which resulted in the dismissal of M&S's UTPA claim. Subsequently, the district court granted Scottsdale's motion for summary judgment as to the remaining insurance coverage claim. M&S appeals both of these decisions to us.

## II.

We review the district court's decision to grant Scottsdale's motions for summary judgment de novo, viewing the facts in the light most favorable to M&S. Volvo Trademark Holding Aktiebolaget v. Clark Machinery Co., 510 F.3d 474, 481 (4th Cir. 2007). "An award of summary judgment may be appropriately made only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.'" Id. at 481-82 (citing Fed. R. Civ. P. 56(c)). We now address M&S's claims seriatim.

### A.

Scottsdale argues that Virginia law should apply to both the insurance coverage and UTPA claims, while M&S contends that West Virginia law is applicable since the events underlying the default

4

judgment took place in West Virginia.  Using West Virginia choice of law rules, the district court held that Virginia law applied to the parties' claims.  M&S posits that the district court did not properly apply West Virginia's choice of law rules, and that West Virginia law should regulate the claims between the parties.

i.

As the district court in the instant case sits in West Virginia, West Virginia's choice of law rules provide the appropriate framework for this inquiry.  See Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487 (1941).  West Virginia courts generally use lex loci deliciti to resolve choice of law conflicts, but for "particularly thorny conflicts problems", see e.g., Oakes v. Oxygen Therapy Services, 178 W. Va. 543, 544 (1987), the West Virginia Supreme Court of Appeals has relied on the Restatement (Second) of Conflict of Laws (1971), Sections 6[4] and 145[5], to

---

[4]Section 6 sets out the following factors to consider in determining which forum's choice of law is appropriate:

- the needs of the interstate and international systems;
- the relevant policies of the forum;
- the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
- the protection of justified expectations;
- the basic policies underlying the particular field of law;
- certainty, predictability, and uniformity of result; and
- ease in the determination and application of the law to be applied.

[5]Section 145 provides that when applying Section 6, the following additional factors should be taken into account in the

5

provide the framework for determining the applicable law. When reviewing complex contracts, see e.g., New v. Tac&C Energy, Inc., 177 W. Va. 648 (1987) and "parasitic" torts - i.e., torts dependent upon an underlying breach of contract claim, see e.g., Oakes, 178 W. Va. at 544 - West Virginia courts have resorted to using the Restatement.

The district court separately analyzed the choice of law issue in the context of the UTPA claim and the insurance coverage claim.[6] With respect to the UTPA claim, the district court held that the facts in this case were sufficiently thorny to justify utilizing the Restatement (Second) of Conflict of Laws because "tangible injuries" were not present and due to the "esoteric nature of the harm here along with the locus of where it was inflicted." (J.A. 335.) We agree with the district court's decision to use the Restatement, in part, because the central thrust of this case is a breach of contract claim. While the negligence claims are not technically dependent upon the breach of contract claim, the action

choice of law analysis:

- the place where the injury occurred;
- the place where the conduct causing the injury occurred;
- the domicile, residence, nationality, place of incorporation, and place of business of the parties;
- the place where the relationship, if any, between the parties is conferred.

[6]It is unclear whether the district court actually used the Restatement analysis in its choice of law analysis for the insurance coverage claim.

underlying the torts - i.e., Sandcastle's false representation that it was not involved in a civil action involving more than $10,000 - was a necessary precursor to M&S's decision to sign the financing agreements.

In addition, it is difficult to pinpoint the precise location of the injury in this case because of its exclusively financial nature. Finally, since this dispute involved actions taken by three parties in at least four states, lex loci deliciti is ill-equipped to resolve this choice of law dilemma and as such, it is appropriate to review the additional factors set out in Sections 6 and 145 of the Conflict of Laws Restatement (Second).

Applying the Restatement to the facts of this case, the district court held that Virginia law applied to the UTPA claim for several reasons, including: (1) M&S (a partnership based in New York) and Scottsdale (an Ohio citizen with its principal place of business in Arizona) were only related through their contact with Sandstone, a company based in Virginia; (2) the financial injury alleged by Sandstone had its "roots in a Virginia commercial transaction" (J.A. 339-340); (3) the relationship between Sandcastle and Scottsdale was centered in Virginia; (4) Scottsdale had no expectation of being hauled into court under West Virginia's UTPA; and (5) due to the centrality of Sandcastle's role in this conflict, Virginia's policies for insurer malfeasance have a significant role in this dispute.

7

While the contacts between M&S, Sandcastle, and West Virginia were substantial - e.g., the operations financed via the loan agreements occurred in West Virginia - we ultimately agree with the district court's decision to apply Virginia law to the UTPA claim. The heart of M&S's UTPA claim alleges that Scottsdale "engaged in unfair claim settlement practices" as defined by UTPA, during the underlying action. However, there is little connection between Scottsdale's actions (or lack of action) in declining to accept Sandstone's tender and the state of West Virginia. Since Scottsdale has no corporate operations in West Virginia, its decision to forego representing Sandstone must have occurred outside of West Virginia. Sandcastle's relationship with both M&S and Scottsdale serves as the litigating parties' sole connection to each other in the instant case. As evidenced by the underwriting papers, Sandcastle's business operations were concentrated in Maryland and Virginia, and as such, Scottsdale could not have envisioned being hauled into a West Virginia court.

Finally, the fact that M&S and Sandcastle are not West Virginia residents and have extremely limited commercial contacts with West Virginia favors the view that West Virginia insurer malfeasance law will not be undermined in any material manner if it is not applied in this case. On the other hand, as Sandcastle is a Virginia citizen, Virginia has an interest in ensuring that Virginia law regulates how insurance companies defend its insured's

8

claims. Thus, based on the litigating parties' limited contacts with West Virginia, we find that the district court correctly determined that Virginia law should be applied to the UTPA claim. Since Virginia does not have a statute analogous to West Virginia's UTPA, M&S's UTPA claim is not viable and as such, the district court's decision to apply Virginia law and grant Scottsdale's motion for partial summary judgment as to M&S's UTPA claim is affirmed.

ii.

With respect to the insurance coverage claim, the district court held that Virginia law was applicable because (1) the CGL policy was formed and entered into in Virginia with the assistance of Sandcastle's insurance agent and (2) delivered to Sandcastle in Virginia, where it was domiciled and (3) Sandcastle never informed Scottsdale that it was doing business in West Virginia.

The West Virginia state courts have often addressed choice of law issues in the context of interpreting insurance policies, and in particular, motor vehicle policies. They have generally concluded that the law of the state where the policy is issued will apply to judicial proceedings involving the interpretation of that policy. Howe v. Howe, 218 W. Va. 638, 644 (W. Va. 2005). However, the West Virginia state courts have set out an exception to that general rule when "the risk insured was principally located where

9

another state has a more significant relationship to the transaction and the parties." Id.

While West Virginia certainly had a relationship to the parties and the underlying transaction, Virginia clearly had a more significant relationship for the same reasons detailed in the UTPA choice of law analysis in the previous section, in addition to the fact that the insurance policy was issued in Virginia. Thus, Virginia law must be applied to the insurance coverage claim.[7]

B.

In granting Scottsdale's motion for summary judgment on the insurance coverage claim, the district court held that the default judgment only applied to M&S's breach of contract claim because (1) M&S's failure to discuss its negligence claims in the pretrial order "practically robbed the amended pleading of any further effect" (J.A. 364) and (2) "a careful reading of the operative pleadings in the underlying action discloses that Sandcastle was sued only for breach of contract." (J.A. 364.)

We first turn to the issue of the pretrial order. According to the district court,

> . . . [if] [M&S] desired to pursue any extant negligence claims against Sandcastle after voluntarily dismissing its individual, corporate agents who were targeted by those claims, one would have expected the negligence claims to appear in the all-encompassing pretrial order

---

[7]The district court never reached the question of whether there was actually any difference between Virginia and West Virginia law as to the insurance coverage issue.

10

> or to have at least been added by amendment of that critical document after the last corporate agent-defendant, Spencer, was voluntarily dismissed.

(J.A. 364-365.) M&S argues that the district court erred because both West Virginia law[8] and the local district court rules provide that only CONTESTED issues of fact and law be set out, and the purpose of the pretrial order was to set out the damage calculations. Rule 16.7 of the Local Rules of the Southern District of West Virginia states, in part, that a proposed pretrial order must include "<u>contested</u> issues of law requiring a ruling before trial" and a "single listing of the <u>contested</u> issues of fact; and a single listing of the <u>contested</u> issues of law..." (emphasis added). M&S argues that because Sandcastle did not respond to its Amended Complaint, all of the facts in the Amended Complaint were deemed admitted and uncontested.

Scottsdale responds that federal law and our precedent mandate that a party waives its claim if it is not included in a pretrial order. We agree with Scottsdale. The "[f]ailure to identify a legal issue worthy of trial in the pretrial conference or pretrial order waives the party's right to have that issue tried." <u>McLean Contracting Co v. Waterman Steamship Corp</u>, 277 F.3d 477, 480 (4th Cir. 2002) (citing to Fed. R. Civ. P. 16, advisory notes which

---

[8]Since West Virginia law is inapposite to this case, there is no need to address this argument. In addition, we find that since this is a procedural issue, federal law is applicable. <u>See</u> <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938).

11

state, in part, "[C]ounsel bear a substantial responsibility for assisting the court in identifying the factual issues worthy of trial. If counsel fails to identify an issue to the court, the right to have the issue tried is waived."). The purpose of the pretrial order is to provide notice to the district court of all issues that remain unresolved. While neither Sandcastle nor Scottsdale responded to M&S's Amended Complaint, and Sandcastle's attorney withdrew months before the trial, those events alone do not provide incontrovertible evidence that the issues in the Amended Complaint were true.

Nothing would have prevented Sandcastle or Scottsdale from appearing at the trial to contest any or all of the claims in question. Thus, M&S should have included all of its claims, including the negligence claims, in the pretrial order. Its failure to do so was a de facto waiver of its negligence claims against Sandcastle and its insurer, Scottsdale. See 6A Charles A. Wright et al., Federal Practice and Procedure Civ. 2d. § 1522 (updated through 2008) ("[T]he pretrial order is treated as superseding the pleadings and establishing the issues to be considered at trial."). As such, we affirm the district court's decision to grant Scottsdale's motion for summary judgment as to the insurance coverage claim.[9]

_____

[9]Because M&S's failure to include its negligence claims in its pretrial order resolves this issue, we need not address M&S's remaining claims.

C.

For the reasons stated above, the district court's judgments are affirmed.

AFFIRMED